67 A.3d 772

**LOWER MAKEFIELD TOWNSHIP, Appellant**

v.

**The LANDS OF CHESTER DALGEWICZ and Christine Dalgewicz, Husband and Wife; John E. Dalgewicz; Chester W. Dalgewicz, Jane Cichocki; Richard K. Dalgewicz and Christine K. Newman, of Lower Makefield Township, County of Bucks, Commonwealth of Pennsylvania, Appellees.**

Supreme Court of Pennsylvania.

Argued Nov. 29, 2011.

Decided May 29, 2013.

Allan D. Goulding, Jr., Sean Robert Sullivan, Curtin & Heefner, L.L.P., Morrisville, for Appellant.

Justin Rick Miller, Colin J. O'Boyle, Blue Bell, Dean Richard Philips, Marvin L. Wilenzik, Blue Bell, Elliott Greenleaf & Siedzikowski, P.C., Aimee L. Kumer, for Appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

Appellant appeals the Commonwealth Court's order affirming the trial court's ruling that testimony regarding a *bona fide* offer and the underlying offer letter itself could be introduced into evidence in a condemnation valuation trial. We affirm.

Appellees owned a 166–acre farm in Lower Makefield Township. On December 6, 1996, appellant condemned the property in order to build a public golf course. Appellees filed preliminary objections challenging the validity of using eminent domain for such a purpose. That issue was eventually appealed to the Commonwealth Court, which found the taking was for a legitimate public use. A Board of View determined the value of the property was $3,990,000. As the parties were unable to agree on damages, the matter proceeded to a jury trial for a calculation of the property's value.

The trial lasted six days. A total of 11 witnesses were called, one of whom was appellee Chester Dalgewicz. Mr. Dalgewicz testified regarding the farm's history and the interest shown by several developers in purchasing the property due to its size and proximity to Interstate 95. He described some of the offers received both before and after the property was condemned, including a 1995 agreement of sale with Ryland Homes for $5.1 million, and a 1998 sales agreement with Toll Brothers for $7 million, contingent upon the condemnation being overturned.

During Mr. Dalgewicz's testimony, he described a December, 1998 written offer from Pulte Homes, Inc., including the $8 million offer price; the offer letter was also introduced into

evidence. Appellant objected, reiterating objections made in its motion *in limine*, arguing the offer was inadmissible as it did not result in a sales agreement and any testimony concerning the offer price would be irrelevant and prejudicial. The trial court overruled the objection, relying on its decision denying the motion *in limine*, and further explained it would be appropriate to "let in what was going on with this piece of land in terms of developers from a reasonable time before to a reasonable time after the taking." N.T. Trial, 11/18/08, at 31. The court observed the Township could cross-examine Mr. Dalgewicz on the nature of the offer, and that its evidentiary value was "something that should be argued to the jury[.]" *Id.*, at 31–32. The jury determined the fair market value of the property was $5,850,000.[1] Appellant filed post-trial motions, alleging the trial court erred in admitting the Pulte offer; the trial court denied the motions. In its opinion denying post-trial relief, the trial court held the offer was admissible to prove the property was highly sought after by developers, and testimony concerning the offer was admissible because concerns regarding hearsay and the abstract nature of offers were not present.

On appeal, the Commonwealth Court affirmed, holding the trial court did not abuse its discretion in admitting the Pulte offer. The court held that while case law suggests mere offers generally should not be admitted into evidence, the underlying rationale for such a prohibition was not present here. The court noted both parties stipulated to the authenticity of the Pulte offer, and the offer was introduced merely to show the reasonableness of the Toll Brothers agreement; thus, there were no hearsay concerns. While reiterating the general rule, the court crafted a narrow exception where "a sufficient foundation was laid to establish that the offer was made in

1. In addition to the $8 million Pulte offer and the $7 million Toll Brothers agreement, the following valuation evidence was produced at trial: appellees' expert's testimony that the property's value was $6,870,000; a June, 1998 offer from Toll Brothers for $6,100,000, curiously offered by appellant; a 1995 sales agreement with Ryland Homes to purchase the property for $5,100,000; expert testimony valuing the property at $4,577,000; and testimony by appellant's experts valuing the property at $3,610,000 and $3,200,000 respectively.

good faith, by a party acquainted with the value of the [p]roperty, and of sufficient intention and ability to pay" so as to make it a *bona fide* offer and, therefore, admissible. *Lower Makefield Twp. v. Lands of Dalgewicz,* 4 A.3d 1114, 1120 (Pa.Cmwlth.2010). Furthermore, the Commonwealth Court found appellant could not show it was prejudiced by the trial court's allowance of the Pulte offer into evidence because the jury award was over $2 million less than the offer, and the information contained in the offer was established by other competent evidence.

Appellant petitioned for allowance of appeal, which we granted, limited to the following issues:

a. Whether a bona fide offer to purchase property subject to condemnation, made within a reasonable time of condemnation, may be admitted to prove the fair market value of the property.

b. Whether the Commonwealth Court departed from the harmless error standard by requiring the Township to show with certainty that the trial court's evidentiary errors affected the verdict.

*Lower Makefield Twp. v. Lands of Dalgewicz,* 609 Pa. 437, 16 A.3d 500 (2011) (*per curiam*). The first issue requires this Court to determine whether the trial court committed an error of law or abused its discretion; therefore, our scope of review is plenary, and our standard of review is *de novo.* *See Pocono Manor Investors, LP v. Pa. Gaming Control Bd.,* 592 Pa. 625, 927 A.2d 209, 216 (2007).

Like the Commonwealth Court and the trial court, for the reasons given below, we find the traditional concerns over relevancy and the speculative nature of offers was not present here. However, the Commonwealth Court's creation of an exception to the old rule concerning admissibility of offers is unnecessary in light of the General Assembly's broadening of the scope of admissible evidence in its 1964 amendments to the Eminent Domain Code.[2]

**2.** 26 Pa.C.S. § 101 *et seq.* The Eminent Domain Code states, in pertinent part:

This Court has held offers to buy property subject to condemnation proceedings are inadmissible to prove the value of the property. *Anderson v. Dept. of Highways*, 422 Pa. 1, 220 A.2d 643, 645 (1966) (*per curiam* opinion affirming on trial court opinion, 26 Pa. Dist. & Co. R.2d 662). This limitation arose from the concern "testimony of the amount of an offer by one who did make it would offend the '[h]earsay' rule, and the admission of the testimony by the offeror himself would lead to the investigation of collateral matters, and confuse the main issue." *Kelly v. Redevelopment Authority of Allegheny County*, 407 Pa. 415, 180 A.2d 39, 45 (1962). In *Anderson*, this Court further explained that inquiring into the amount of purchase offers "would introduce wholly collateral issues as to the bona fides of the alleged offer, the conditions under which and by whom it was made and all of a host of other unrelated issues[.]" *Anderson*, at 645.

█ In 1964, in response to such precedent,[3] the General Assembly made changes to the Eminent Domain Code which substantially broadened the scope of admissible evidence, thus easing evidentiary restrictions for determining fair market value of a property. *See* 26 Pa.C.S. § 1105(1), Joint State Government Commission Comments—1964. Specifically,

> At the hearing before the viewers or at the trial in court on appeal:
> (1) A qualified valuation expert may, on direct or cross-examination, *state any or all facts and data* which the expert considered in arriving at an opinion, whether or not the expert has personal knowledge of the facts and data, and a statement of the facts and data and the sources of information shall be subject to impeachment and rebuttal.
> (2) A qualified valuation expert may, on direct or cross-examination, testify in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis, which testimony may include, *but shall not be limited to*, the following:
> (i) The price and other terms of any sale or contract to sell the condemned property or comparable property made within a reasonable time before or after the date of condemnation.
> 26 Pa.C.S. § 1105(1)-(2)(i) (emphasis added).

3. While *Anderson* was decided after the 1964 amendments, the majority opinion did not address the changes. The dissent, however, recognized the changes, suggested the Code should control, and argued it would "permit testimony as to the value after condemnation." *Anderson*, at 646 (Cohen, J., dissenting).

§ 1105(1) provides a qualified valuation expert[4] may "state *any or all facts and data* which the expert considered in arriving at an opinion[.]" 26 Pa.C.S. § 1105(1) (emphasis added). Further, § 1105(2) provides a qualified valuation expert may "testify in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis[.]" *Id.,* § 1105(2). The General Assembly makes clear this section is intended "to change existing law which severely restricts the testimony of the expert witness on the ground that 'collateral issues' are introduced." *Id.,* § 1105(2), Joint State Government Commission Comments—1964. The General Assembly's liberalization of the Eminent Domain Code explicitly permits testimony that may introduce "collateral issues" in direct contrast to the reasoning relied on in *Kelly* and *Anderson;* thus, continued reliance on their dictates is misplaced.

■ In the instant case, under § 1105(1), the Pulte offer constituted "data which the expert considered in arriving at an opinion"; thus, it could be introduced in the condemnation valuation trial through the expert's testimony. *See id.,* § 1105(1). In light of the significant revisions to the Code and explicit "liberalization of the examination of the expert," testimony regarding the Pulte Letter of Intent, which constituted a *bona fide* offer and was relied on by a qualified valuation expert in formulating an opinion, was admissible evidence of the fair market value of this property.[5] *See* 26 Pa.C.S.

4. Appellees, as condemnees, are automatically considered "qualified valuation experts." *See* 26 Pa.C.S. § 1104; *King v. West Penn Power Co.,* 946 A.2d 184, 188 (Pa.Cmwlth.2008).

5. Despite the Code's liberalization of the receipt of expert evidence concerning property value, the 1964 legislation did not purport to override all evidentiary restrictions on expert testimony. Those limitations, which are codified in the Rules of Evidence this Court adopted in 1998, include certain restrictions pertaining to expert testimony. Under Rule 703, for example, the underlying facts or data relied on by the expert "need not be admissible in evidence." Pa.R.E. 703. Additionally, under Rule 705, "[t]he salient facts relied upon as the basis of the expert opinion must be in the record so that the jury may evaluate the opinion." Pa.R.E. 705, Official Comment (citing *Commonwealth v. Rounds,* 518 Pa. 204, 542 A.2d 997, 999 (1988) ("At the heart of any analysis is the veracity of the facts upon which the [expert's] conclusion

§ 1105(1)-(2) & Joint State Government Commission Comments—1964.

■ Regarding the offer letter itself, we agree with the Commonwealth Court that it was admissible, but on different grounds.[6] The Commonwealth Court noted both parties "stipulated to the authenticity of the [Pulte] Letter of Intent, i.e., that it was drafted, sent and received in the ordinary course of business and therefore fell within the business records exception to the hearsay rule." *Dalgewicz*, at 1119 (citing Pa.R.E. 803(6)). While it is clear from the record appellant stipulated to the authenticity, *see* N.T. Trial, 11/18/08, at 29–32, it is less clear that appellant stipulated the offer fell within the business records exception. Regardless, appellant never made a specific objection to the offer letter as hearsay thus, any objection that it was hearsay was waived. *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1124 (2000) ("It is axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objections during trial and raise the issue in post-trial motions.") (citations omitted).

At trial, appellant merely reiterated its objection to a discussion of the offer that it raised in its pre-trial motion *in limine*, which was denied by the trial court. The basis for appellant's motion *in limine* requesting the court to bar any discussion of various offers was that "[n]one of the appraisers in the case relied on these offers ... in arriving at their opinions of value in this case" and "[a]ny such testimony concerning offers or potential offers for [t]he [p]roperty ... is irrelevant and would be prejudicial." Appellant's Motion *In Limine*, at 9. Therefore, as appellant never made a specific objection that the letter was hearsay, the trial court was within its bounds of allowing it into evidence, subject to other evidentiary concerns, such as its relevancy or probative value.[7]

is based. Without the facts, a jury cannot make any determination as to validity of the expert's opinion.")).

6. The Code speaks only of the admissibility of "testimony," and does not address the admissibility of the underlying documents. Such documentation is admissible as provided by general evidentiary rules.

7. Even in appellant's post-trial motions and supporting brief, it fails to mention hearsay as a reason for excluding the offer. Instead, appel-

*See Stevens v. Reading Street Railway Co.*, 384 Pa. 390, 121 A.2d 128, 131 (1956) ("Where inadmissible evidence, including hearsay, is admitted without objection and is relevant and material to the fact in issue, it is to be given its natural probative effect as if it were in law admissible.") (citations omitted).

Turning to the relevancy and speculative nature of offers, we agree with the Commonwealth Court that this particular offer was relevant because it helped prove the reasonableness of the Toll Brothers offer and it was probative of the fair market value of the property. Appellees received the $8 million Pulte offer contemporaneously with the $7 million Toll Brothers offer.[8] Indeed, the only significant difference between the Pulte offer and the Toll Brothers offer, besides the price, is the fact that appellees accepted the Toll Brothers offer. Therefore, the Pulte offer was helpful in demonstrating the demand for the property and the legitimacy of the Toll Brothers offer. This was necessary because appellant argued at trial that Toll Brothers did not intend to actually purchase the property and its offer was unrealistic.

While the Pulte offer can be used to show the reasonableness of the Toll Brothers offer, the converse is also true—the similarities between the two offers lend support to the fact that the Pulte offer was not speculative. Like Toll Brothers, Pulte Homes is a large, sophisticated developer and home builder with a nationwide presence; there is no evidence to suggest its offer was not genuine, issued in bad faith, or an attempt to inflate the value of the property. Testimony, including from appellant's own expert, established the process which a large developer, such as Pulte Homes or Toll Brothers, undertakes before submitting an offer. This was not some "fly by night" contractor rushing to make a bid and betting the farm on the success of a development it might not

lant's argument focused on the fact that the offer was rejected; therefore, it was inherently inaccurate. Appellant's Brief in Support of Motion for Post–Trial Relief, at 28.

8. As noted by the Commonwealth Court, both offers were made within a reasonable time after the condemnation, as required under the Code. *Dalgewicz*, at 1118 (referencing 26 Pa.C.S. § 1105).

have the resources to complete. As the Commonwealth Court stated, the offer "indicated [Pulte's] intention and ability to carry out the transaction. The Pulte offer was a firm offer that [appellees] could have accepted upon receipt." *Id.,* at 1120. If the goal of the trial is to ascertain the fair market value, we fail to see a reason why testimony regarding a *bona fide* offer like this should be automatically excluded from consideration.

 Accordingly, we hold there is no bright-line rule prohibiting testimony of bona fide offers into evidence, especially, as in the present case, when a contract has been signed and the offer is used to show that contract's reasonableness. In so holding, we are guided by the principle that "[t]he admission or exclusion of evidence is within the sound discretion of the trial court[.]" *Lehigh–Northampton Airport Authority v. Fuller,* 862 A.2d 159, 168 (Pa.Cmwlth.2004) (citations omitted). Whether an offer is *bona fide* and whether it should be admitted are questions best left to the trial court as the gatekeeper of the evidence.

We hold the trial court did not err or abuse its discretion in admitting both testimony about the Pulte offer and the offer letter itself into evidence. Accordingly, we need not address the second issue for which allowance of appeal was granted. As the Commonwealth Court similarly concluded the trial court did not err, its discussion of prejudice and the harmless error doctrine were *dicta.*

The order of the Commonwealth Court is affirmed. Jurisdiction relinquished.

Former Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justice SAYLOR and BAER, Justice TODD and Justice McCAFFERY join the opinion.