# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: Condemnation by the Pennsylvania Turnpike Commission of Property Located in the Township of Bensalem (Incorrectly Identified as the Township of Bristol in the Notice to Condemnees), Bucks County, Commonwealth of Pennsylvania, for the I-95 Interchange Project (Parcel ID No. 02-033-004) | : : : : : : : : : : : | |
| v. | : : | |
| The Lands of Lewis Tarlini and Louise Ann Tarlini, Husband and Wife, of Bensalem Township, The Eminent Domain County of Bucks, Commonwealth of Pennsylvania, Condemnees | : : : : : : : | |
| Appeal of: Pennsylvania Turnpike Commission | : : | No. 1131 C.D. 2017 Argued: March 8, 2018 |

BEFORE:  HONORABLE ROBERT SIMPSON, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                          FILED: April 10, 2018

The Pennsylvania Turnpike Commission (Commission) appeals from the Bucks County Common Pleas Court's (trial court) June 16, 2017 order denying its Motion for Post-Trial Relief (Motion). The sole issue before this Court is whether the trial court erred by admitting a hearsay affidavit as the basis for an expert's valuation opinion. After review, we affirm.

On April 27, 2007, the Commission filed a declaration of taking (Declaration) condemning Lewis Tarlini's and Louise Ann Tarlini's (the Tarlinis) property formerly located at 2986 Galloway Road, Bensalem, Pennsylvania (Property). The Property is adjacent to and partially surrounded by the Parx Casino and Racetrack (Parx Casino). The remainder of the Property abuts the Pennsylvania Turnpike. The Property was zoned residential at the time the Declaration was filed. The existing access to the Property was through a deeded 12-foot right-of-way. On May 5, 2008, a Petition to Appoint Board of Viewers was filed. On June 4, 2008, the trial court appointed a Board of Viewers; however, on July 24, 2008, that order was vacated and a new Board of Viewers was appointed. On February 8, 2010, the Board of Viewers filed its report. On March 5, 2010, the Commission appealed from the Board of Viewer's Award.

On January 2, 2006, more than a year before the Declaration's filing, the Tarlinis entered into a Purchase and Sale Agreement (Sale Agreement) with a purchaser who intended to develop a hotel on the Property. The negotiated purchase price was $2,200,000.00.[1] However, the condemnation prevented the Property's sale.

The trial court commenced a jury trial on February 13, 2017, wherein, the sole issue was the Property's fair market value as of the Declaration date.[2] The

---

[1] The Sale Agreement provided:

> [T]he Purchaser shall have the absolute right to perform such tests, studies and investigations as it deems appropriate in its sole discretion to determine the feasibility of developing the [P]roperty for a hotel. In the event the Purchaser, in its sole discretion determines for any reason that development of the [P]roperty as aforesaid is not feasible, the Purchaser shall within the one hundred eighty (180)[-]day period notify Seller in writing of its decision, and in that event this Agreement shall become null and void and the Purchaser shall receive a refund of the deposit with interest.

Reproduced Record at 332a.

[2] Section 703 of the Eminent Domain Code provides:

2

Commission contended that the Property's highest and best use was as a residence. The Tarlinis argued that the Property's highest and best use was as a hotel. In support of the Tarlinis' position, Lewis Tarlini testified, and land planner John H. Kennedy (Kennedy), zoning lawyer John A. VanLuvanee (VanLuvanee), traffic engineer David Horner (Horner) and appraiser Vincent Quinn (Quinn) (collectively, Tarlinis' Experts) also testified. Appraiser William Gontram testified on the Commission's behalf.

The Tarlinis' Experts offered their opinions that the Property was adaptable to hotel use, and that there was a market for such a use in that area. Among the factors the Tarlinis' Experts considered in concluding that the Property was adaptable to hotel use, was whether there was adequate access to the Property from a public road, and the likelihood the Property would be rezoned.[3]

---

Fair market value shall be the price which would be agreed to by a willing and informed seller and buyer, taking into consideration but not limited to the following factors:

(1) The present use of the property and its value for that use.

(2) The highest and best reasonably available use of the property and its value for that use.

(3) The machinery, equipment and fixtures forming part of the real estate taken.

(4) Other factors as to which evidence may be offered as provided by Chapter 11 (relating to evidence).

26 Pa.C.S. § 703. The Pennsylvania Supreme Court has ruled: "There are . . . two requirements . . . for proving highest and best use. First, the condemnee must show the physical adaptability of the land to such a use, and second it must be demonstrated that this use is needed in the area." *Pa. Gas & Water Co. v. Pa. Tpk. Comm'n*, 236 A.2d 112, 116 (Pa. 1967).

[3] Because the Commission has not argued the zoning issue in this appeal, this Court does not address it herein. *See* Commission Amended Br. at 4 ("In this [b]rief, the [Commission] will focus exclusively on a single error of law, the most glaring error occurring at trial – the admission of a hearsay affidavit . . . in support of an absolutely critical element of [its] case: whether there was . . . adequate access . . . .").

In its June 16, 2017 decision, the trial court described the evidence supporting the Tarlinis' position that Property access would be reasonably available:

> Lewis Tarlini testified that he used and maintained the area that would have been used for the driveway without being told to cease by the Parx [Casino] [p]roperty owner. He further testified that there was a driveway for his home and that he regularly cleaned and mowed that area as well[,] and removed and pruned trees. He testified that the Parx [Casino] property owner built a fence that severed the proposed easement area from the rest of the Parx [Casino] property.
>
> [Kennedy] testified about the probability that the [P]roperty owner could have obtained an easement for a driveway over the Parx [Casino] property. He laid out the foundation for that testimony by stating, that he looked at the area to see if Parx [Casino] was using it, and whether it would infringe upon the main operation of the use of the property as a casino or racetrack business. Ultimately, [] Kennedy also relied upon the [affidavit of Thomas Bonner (Bonner), the Vice President and General Counsel of Greenwood Racing, Inc., Parx Casino's owner and operator (Bonner Affidavit)[4]]

---

[4] The Bonner Affidavit states:

> 1. I have been employed as Vice President and General Counsel of Greenwood Racing, Inc., the owner and operator of [Parx Casino] in Bensalem, Pennsylvania, from June 2006 to the present. I am also a member of the Board of Directors of Greenwood Racing, Inc.
>
> 2. In that capacity, I have represented related entities, including Keystone Turf Club, Inc. and Bensalem Racing Association, regarding the development of the [Parx Casino] property. This representation has included real estate transactions.
>
> 3. I am taking this affidavit to supplement and further explain the subjects contained in the affidavit I signed on September 4, 2008.
>
> 4. On October 28, 2008, Keystone Turf Club, Inc. and Bensalem Racing Association sold a portion of their property [(Parx Casino parcel)] to the [Commission] which was located adjacent to . . . [the Property] . . . .
>
> 5. It is my understanding that the [Commission] filed a declaration of taking acquiring the [Property] on April 27, 2007.

4

to reach the conclusion that the [Tarlinis] could have obtained an easement for a driveway over the Parx [Casino] property. The Bonner Affidavit is a written and notarized statement signed by [Bonner] . . . . [Bonner] stated that it is probable for a number of reason[s] that [the Tarlinis] would have been able to acquire a driveway easement over the Parx [Casino] [p]roperty for use as a commercial property.

[Quinn] testified that the [Tarlinis] could have obtained access over the Parx [Casino] property for a hotel. He had appraised the Parx [Casino] property several times and knew [] Bonner. Based upon his experience with the Parx [Casino] property and his dealings with the representatives of the Parx [Casino] property, [] Quinn concluded that [] the Tarlinis could have obtained access.

Trial Ct. Decision at 5-6 (citations omitted).

In a sidebar conference during the Tarlinis' Counsel's direct examination of Kennedy, the Commission's Counsel objected to the Tarlinis' use of the Bonner Affidavit, contending that it was not probative and it was hearsay. *See* Reproduced Record (R.R.) at 99a. The following exchange occurred:

THE COURT: To the extent that [the Tarlinis' Counsel] thinks it says something, he can argue it says something. I am going to let him put that to the jury, No. 1.

---

6. As set forth in my September 4, 2008 affidavit, prior to [the Commission's] acquisition of the above properties, [Lewis] Tarlini approached Keystone Turf Club, Inc. regarding obtaining a 60[-]foot wide driveway easement.

7. **Had [the Commission] not acquired the above properties, it is probable for a number of reasons that [the Tarlinis] would have been able to acquire a driveway easement over the Parx [Casino parcel] at a fair and mutually agreed upon price to be used for a commercial development.**

Reproduced Record at 345a-346a (emphasis added).

5

No. 2, as to the issue of it being hearsay, it is hearsay, but it's an expert opinion, and this is the more difficult area in terms of expert testimony. Under the federal rule, they allow experts to just wax on forever --

[COMMISSION'S COUNSEL]: But this --

THE COURT: Under the Pennsylvania Rules of Evidence, you have to prove the underlying fact. Knowing that, and knowing that you had knowledge of the information in the affidavit, I am going to let the testimony -- I'm going to let [Kennedy] describe that he had knowledge that that person said those words and that those words support his ultimate conclusion.

I'm going to say to you, you could have deposed that person, and you still could bring that person into the courtroom and cross-examine him, I guess, in theory. I don't know where the guy is or anything about him; I'm just telling you what I'm thinking through in terms of my ruling.

[COMMISSION'S COUNSEL]: It would seem to me in order to meet the evidentiary threshold there would need to be -- showing this would be the sort of material an expert would ordinarily rely on.

THE COURT: I think he just said -- when I heard the testimony. He said I would normally go out and speak to people and I would ask people, and that is where I sort of was watching objecting, not objecting, and you were properly waiting for the right question, but I think he covered that. He might want to supplement it with a couple more questions, but I want to be real clear that nothing comes in beyond what was said in [the Bonner A]ffidavit as to what he relied on.

[TARLINIS' COUNSEL]: May I show [the Bonner A]ffidavit?

THE COURT: I think it would make most sense to show the [Bonner A]ffidavit to hold him within the four corners, but I'll listen to Counsel's argument, yes or no. If you think there is an issue about the jury having published the [Bonner A]ffidavit, I'll listen to it.

6

[COMMISSION'S COUNSEL]: I have a problem with the [Bonner A]ffidavit from start to finish.

THE COURT: I understand.

[COMMISSION'S COUNSEL]: I don't know that publishing changes --

THE COURT: As long as I – I want to keep him in the framework, but you don't care, you don't feel you are unduly -- you feel you are being prejudiced by allowing the information to come in. So noted; you are preserving that.

Whether it is shown by a picture of the [Bonner A]ffidavit or him reading it, you don't care one way or the other?

[COMMISSION'S COUNSEL]: No, I think I'm equally prejudiced either way.

THE COURT: All right, you made your record on that.

R.R. at 100a-103a. Kennedy then explained that, in situations like the Tarlinis' circumstances, he typically reached out to adjacent property owners to determine if the adjacent owners would be willing to grant an easement. The trial court then explained to the jury:

THE COURT: I'm going to stop here for a moment and give the jury a mini lesson in the law in the hopes you'll understand the weight you should give or not give. It's up to you to determine how much weight you are going to give an expert's testimony.

One of the issues raised by [the Commission's] Counsel at sidebar is whether or not the information you are about to see is hearsay. The person who created this [Bonner A]ffidavit isn't in the courtroom and is not subject to being cross-examined.[5]

You have heard that term hearsay before. The purpose of the hearsay rule is to allow someone to cross-examine a witness in front of the jury or the factfinder. Some statements made by a person are admissible for a particular

---

[5] The Commission did not depose Bonner or subpoena him to testify at trial.

reason but not for another reason, in other words, a statement made that this witness is aware of is the basis of his opinion.

At the end of the day, if the statement has some weakness to it, you feel it's insufficient to provide his interpretation, that goes to your decision of whether or not this expert's opinion is worthwhile.

You are going to see some information he relied on. You will then have to decide whether or not that information really is sufficient for the purpose of him coming to the final conclusion he reached.

With that understanding, you may show them the [Bonner A]ffidavit.

R.R. at 103a-105a. Kennedy then testified that the Bonner Affidavit confirmed his opinion that the Tarlinis could have obtained a driveway easement from Parx Casino. At Tarlinis' Counsel's direction, Kennedy read portions of the Bonner Affidavit and then stated that he relied upon it, and as an expert, he typically relied upon similar information in reaching his conclusions.

On February 15, 2017, the jury returned a $2,300,000.00 verdict in the Tarlinis' favor. On February 24, 2017, the Commission filed the Motion. On June 16, 2017, the trial court denied the Commission's Motion, and on July 12, 2017, entered judgment in the Tarlinis' favor. The Commission appealed to this Court.[6]

The law is well-established that "[a] trial court is vested with wide discretion in deciding whether to allow the admission of expert testimony into evidence, and is not subject to reversal absent a clear abuse of discretion." *Daddona v. Thind*, 891 A.2d 786, 805 (Pa. Cmwlth. 2006). In its Opinion pursuant to

---

[6] "This Court's scope of review of the trial court's ruling on post[-]trial motions is limited. In general this Court will not disturb the trial court's ruling unless the court manifestly abused its discretion or committed an error of law that affected the outcome of the case." *Lower Makefield Twp. v. Lands of Dalgewicz*, 4 A.3d 1114, 1116 n.2 (Pa. Cmwlth. 2010), *aff'd*, 67 A.3d 772 (Pa. 2013).

8

Pennsylvania Rule of Appellate Procedure 1925(a) (1925(a) Opinion), the trial court explained its rationale for admitting the Bonner Affidavit into evidence:

> Despite falling under the definition of 'hearsay,' evidence may be admissible as the basis of an expert's opinion [under Pennsylvania Rule of Evidence (Rule) 703.]
>
> . . . .
>
> Additionally, in an eminent domain case, the standard for the admission of evidence is more lenient than for other cases. The Judicial Code provides that evidence in eminent domain matters are governed by the Eminent Domain Code [(Code)] provision. [42] Pa.C.S.[] § 6121. The standard[] states:
>
> > A qualified valuation expert may, on direct or cross-examination, state any or all facts and data which the expert considered in arriving at an opinion, whether or not [t]he expert has personal knowledge of the facts and data[,] and a statement of [the] facts and [data and] the sources of information shall be subject to impeachment and rebuttal[.]
>
> 26 Pa. C.S.[] § 1105(1). The [Commission] was aware of the [Bonner] Affidavit prior to trial and it made no attempt to impeach or rebut its content. [] Kennedy testified that the Bonner Affidavit was the type of information that he typically relies upon. [] Kennedy considered it within the context of whether the proposed use would have access that was 'reasonably available.'
>
> As provided by [Rule] 401, evidence is relevant if (a) it has a tendency to a make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Pa. R.E. 401. The evidence provided by the [Bonner] Affidavit is directly related to whether Parx Casino would have allowed an easement over its property, therefore, it was a consequence in determining the action and is relevant evidence. Furthermore, the [Bonner] Affidavit came into evidence with qualifications and instructions to the jury, which were not objected to nor have they since been challenged. This

9

> [trial c]ourt found that the [Bonner] Affidavit was properly admitted as one of the basis [sic] of an expert's opinion and was relevant to the subject matter before the [trial c]ourt.

1925(a) Opinion at 8-9 (citation and footnote omitted).

The Commission argues that the trial court improperly admitted the Bonner Affidavit. Specifically, the Commission contends that the trial court failed to make a prerequisite finding that a valuation expert would reasonably rely upon an affidavit like the Bonner Affidavit.[7] The Commission further asserts that the Bonner Affidavit contained "remarkably vague [] assurances that access would 'probably' be provided at a 'fair and mutually agreed upon price' 'for a number of reasons[.]'" Commission Amended Br. at 12 (quoting Bonner Affidavit, R.R. at 346a) (emphasis omitted). As it argued to the trial court, the Commission complains that the Bonner Affidavit "doesn't say anything," Commission Amended Br. at 12 (quoting R.R. at 99a-100a); thus, it was unreasonable for the Tarlinis' Expert to rely on it, and it was error for the trial court to admit it into evidence before the trial court resolved "whether the [Bonner A]ffidavit had meaningful substance[.]" Commission Amended Br. at 12.

> Rule 703 provides:
>
> An expert may base an opinion on **facts or data** in the case **that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in**

---

[7] Although the Commission characterizes the issue as whether "an [a]**ffidavit** of [t]his [k]ind [w]ould [r]easonably be [r]elied upon by an [e]xpert [u]nder [t]hese [c]ircumstances[,]" such characterization obfuscates the actual issue – whether an out-of-court representation by a neighboring land owner evidencing a willingness to grant an easement, is a fact of the kind valuation experts would reasonably rely. Commission Amended Br. at 11 (emphasis added; quotation marks omitted). Whether the hearsay information was verbally communicated to the expert, contained in a letter, in an affidavit, or otherwise, assuming the communication is genuine, the relevant inquiry pertains to the substance of the information communicated, not the manner in which it was communicated.

> **forming an opinion on the subject, they need not be admissible for the opinion to be admitted.**

Pa.R.E. 703 (emphasis added).  Further, the Comment to Rule 703 states in relevant part:

> [Rule] 703 requires that the facts or data upon which an expert witness bases an opinion be 'of a type reasonably relied upon by experts in the particular field . . . .'  Whether the facts or data satisfy this requirement is a preliminary question to be determined by the trial court . . . .
>
> When an expert testifies about the underlying facts and data that support the expert's opinion and the evidence would be otherwise inadmissible, the trial judge upon request must, or on the judge's own initiative may, instruct the jury to consider the facts and data only to explain the basis for the expert's opinion, and not as substantive evidence.

Comment, Pa.R.E. 703.  Additionally, Rule 705 provides: "If an expert states an opinion[,] the expert must state the facts or data on which the opinion is based." Pa.R.E. 705.

> The Pennsylvania Superior Court has stated:
>
> It is well-established that an expert may express an opinion which is based on material not in evidence, including other expert opinion [sic], where such material is of a type customarily relied on by experts in his or her profession. *Collins v. Cooper*, 746 A.2d 615, 618 (Pa. Super. 2000); *Primavera v. Celotex Corp.*, . . . 608 A.2d 515 ([Pa. Super.] 1992).  Such material may be disclosed at trial even though it might otherwise be hearsay . . . .  **Such hearsay is admissible because the expert's reliance on the material provides its own indication of the material's trustworthiness: 'The fact that experts reasonably and regularly rely on this type of information merely to practice their profession lends strong indicia of reliability to source material, when it is presented through a qualified expert's eyes.'** *Primavera*, 608 A.2d at 520.

*Boucher v. Pa. Hosp.*, 831 A.2d 623, 628 (Pa. Super. 2003) (emphasis added);

11

In *Primavera*, our Superior Court explained:

In noting the necessity and value of permitting experts to rely on extrajudicial reports and sources, it is important to stress that it is actually the testifying expert's opinion which is being presented and which is subject to scrutiny, cross-examination and credibility determinations. Hence, it is often the case, as it was here, that experts are questioned concerning whether relied-upon sources are 'authoritative' or generally accepted, whether the source material is truly the type ordinarily relied on by similar experts, whether independent or further judgment was brought to bear on particular source material and whether the expert is competent enough to judge the reliability of the sources upon which he relied. These are the safeguards which assure that the experts' opinions are not being offered based on inherently untrustworthy data or data which is not commonly used by other professionals. **If an expert has made faulty assumptions or leaps of judgment in relying on certain sources or in forming conclusions based on those sources, these issues are the proper subject of cross-examination.**

The relative roles of jury and expert in this context have been described as follows:

> In a sense, the expert synthesizes the primary source material -- be it hearsay or not -- into properly admissible evidence in opinion form. The trier of fact is then capable of judging the credibility of the witness as it would that of anyone else giving expert testimony. This rule respects the functions and abilities of both the expert witness and the trier of fact, while assuring that the requirement of witness confrontation is fulfilled.

*United States v. Sims*, 514 F.2d 147, 149 (9th Cir. 1975), *cert. denied* 423 U.S. 845 . . . (1975).

As this court has indicated, **the crucial point is that the fact-finder be made aware of the bases for the expert's ultimate conclusions, including his partial reliance on indirect sources. 'The adverse party then has the opportunity** . . . **to present its own countervailing facts**

12

**and figures and/or expert testimony to convince the factfinder that the weight to be given to the other side's expert testimony should be little or none'.** *In re Glosser Bros., Inc.,* . . . 555 A.2d 129, 142 ([Pa. Super.] 1989).

. . . . Where, as here, the expert uses several sources to arrive at his or her opinion, and has noted the reasonable and ordinary reliance on similar sources by experts in the field, and has coupled this reliance with personal observation, knowledge and experience, we conclude that the expert's testimony should be permitted.

*Primavera*, 608 A.2d at 520-21 (emphasis added).

Here, the Commission acknowledges that "[d]espite exhaustive research, [it] has failed to find any Pennsylvania [s]tate [c]ourt appellate authority addressing" its proposition that the trial court should have independently evaluated the Bonner Affidavit to determine if it had meaningful substance and made such a finding. Commission Amended Br. at 13. Instead, it points to Texas case law and federal case law to support its argument that "[t]he reasonableness of the expert's reliance, and, in turn, the legal sufficiency of the substance of the affidavit was a threshold question of law for the [trial c]ourt." *Id.* Citing to *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997) and *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 747-48 (3d Cir. 1994), the Commission asserts that it is the trial court's obligation to independently evaluate the reliability of the data relied upon by the expert.

Specifically, the Commission relies on the *Merrell Dow* Court's statement:

The view that courts should not look beyond an averment by the expert that the data underlying his or her opinion are the type of data on which experts reasonably rely has likewise been rejected by other courts. The underlying data should be independently evaluated in determining if the opinion itself is reliable. *See, e.g.,* [*Paoli*], 35 F.3d [at] 747-48 . . . .

13

*Merrell Dow*, 953 S.W.2d at 713.  Notably, the expert testimony at issue in *Merrell Dow* involved sufficiency of data supporting scientific opinion evidence.

Similarly, *Paoli* involved the admissibility of expert scientific opinion evidence, wherein the Third Circuit Court of Appeals stated:

> We now make clear that it is the judge who makes the determination of reasonable reliance, and that for the judge to make the factual determination under [Federal] Rule [of Evidence] 104(a) that an expert is basing his or her opinion on a type of data *reasonably* relied upon by experts, the judge must conduct an independent evaluation into reasonableness.  The judge can of course take into account the particular expert's opinion that experts reasonably rely on that type of data, as well as the opinions of other experts as to its reliability, but the judge can also take into account other factors he or she deems relevant.

*Paoli*, 35 F.3d at 748.  Finally, the Commission points to the Third Circuit Court of Appeals' decision in *Z.F. Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d. Cir. 2012).  Therein, the Court held:

> The record amply supports the District Court's concern that, although [the plaintiff's expert] was generally aware of the circumstances under which the [revised strategic business plan[8]] was created and the purposes for which it was used, he lacked critical information that would be necessary for [the defendant] to effectively cross-examine him.  An expert's 'lack of familiarity with the methods and the reasons underlying [someone else's] projections virtually preclude[s] any assessment of the validity of the projections through cross-examination.' *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993)[.]

*Z.F. Meritor*, 696 F.3d at 293.

The Commission argues that "[t]he parallels [between *Z.F. Meritor* and the instant] case are striking[.]"  Commission Amended Br. at 16.  However, they are

---

[8] "The [revised strategic business plan] contained a five-year forecast of profit and loss estimates based on estimated unit sales, unit prices, manufacturing costs, operating expenses, and other considerations." *Z.F. Meritor*, 696 F.3d at 291 n.23.

not.  The representations in the Bonner Affidavit did not consist of scientific or complex mathematical data, or methodologies such as that in the revised strategic business plan at issue in *Z.F. Meritor*.  Rather, the Bonner Affidavit simply represented Parx Casino's position on its willingness to grant an easement.  Moreover, "courts of our Commonwealth are not bound by decisions of federal courts inferior to the U[nited] S[tates] Supreme Court."  *In re Stevenson*, 40 A.3d 1212, 1216 (Pa. 2012).  Nor are Pennsylvania Courts bound by decisions of other states' courts.  *Eckman v. Erie Ins. Exch.*, 21 A.3d 1203 (Pa. Super. 2011).

Recently, in *Commonwealth v. Watkins*, 108 A.3d 692 (Pa. 2014), the Pennsylvania Supreme Court held that the Post Conviction Relief Act (PCRA) court did not abuse its discretion when it declined to admit two lay affidavits concerning Watkins' participation in "KIDS," a program for troubled teens (KIDS program), and declined to admit the Watkins' expert's testimony based thereon.  Therein, Watkins' expert (Dr. Woods), a psychiatrist who had never examined or even spoken to Watkins, based his opinion of Watkins' competence solely on his reviews of Watkins' medical records and the affidavits.  The first affidavit, which was unsigned and undated, was purportedly by an individual identified as a staff person from the KIDS program during Watkins' involvement.  The affidavit was accompanied by an email from the individual purporting to have read and agreed with the affidavit.  The second affidavit was from an individual explaining that he had participated in the KIDS program with Watkins, and describing his and Watkins' painful emotional experiences and Watkins' physical and emotional state while in the KIDS program.

The Pennsylvania Supreme Court explained:

> We cannot find that the PCRA court abused its discretion in this regard.  [Watkins] has made no showing that experts in Dr. Woods's field of psychiatry would form an opinion in reasonable reliance on statements of 'facts' prepared for litigation;  untested for credibility or accuracy;  and

15

> **authored by lay persons with unknown qualifications, experience, and motivation to whom the experts have never spoken**. Dr. Woods'[] opinion testimony based on the statements would have no value unless the statements themselves were reliable and credible. Notably, [Watkins] could have called the declarants to testify, allowing them to be cross-examined and thereby tested on the reliability, accuracy, and credibility of their declarations. Indeed, the PCRA court explicitly asked PCRA counsel if the declarants were going to testify, and counsel's answer was 'no.' The PCRA court did not abuse its discretion in declining to allow Dr. Woods to give opinion testimony based on the out-of-court statements in the [affidavits].

*Watkins*, 108 A.3d at 737 (emphasis added). In contrast to *Watkins*, the trial court in the instant case permitted the expert testimony, and its decision is entitled to deference absent clear abuse of discretion. Further, the out-of-court statement was made by the Vice President and General Counsel of Parx Casino's owner and operator, an attorney, and an individual whom the Tarlinis' Experts knew, and it expressed Parx Casino's willingness to grant an easement. Thus, the facts at bar differ significantly from those in *Watkins*.

The law is well-established that an expert may rely on hearsay statements in reaching an opinion. *See Boucher*; *Luzerne C[ty.] Flood Prot. Auth. v. Reilly*, 825 A.2d 779 (Pa. Cmwlth. 2003); *see also In re Adoption of R.K.Y.*, 72 A.3d 669, 677 (Pa. Super. 2013) (holding that the trial court properly admitted children's out-of-court statements into evidence where child psychology expert "testified that reliance on interviews when preparing a psycho-sexual evaluation, including interviews conducted by colleagues, is 'common practice in our field,' . . . thus satisfying the basic prerequisites for admission under Rules 703 and 705"). Accordingly, precluding the Tarlinis' Experts' testimony because the Bonner Affidavit is hearsay and Bonner was not subject to cross-examination, under these circumstances, does not comport with precedential Commonwealth law.

16

Contrary to the Commission's position, the Bonner Affidavit **does** communicate facts. The Vice President and General Counsel of Parx Casino's owner and operator attested under oath that Parx Casino did not intend to use the proposed easement area and represented that Parx Casino would not have been opposed to granting an easement. He further expressed in his Affidavit that Parx Casino was willing to negotiate with the Tarlinis, and to grant an easement for a "fair and mutually agreed upon price[.]" R.R. at 346a. An expression by a neighboring landowner's representative regarding the landowner's willingness to grant an easement permitting access to a property where such easement would permit access, is a fact upon which a valuation expert would reasonably rely when considering whether access would be reasonably available. Kennedy and Quinn confirmed that they reasonably relied upon landowners' positions on granting easements in such circumstances, and the trial court accepted their testimony.

The Commission also takes issue with the Tarlini's Experts' reliance on the Bonner Affidavit, given Bonner's statement that "it is probable for a number of reasons that [Lewis] Tarlini would have been able to acquire a driveway easement over the Parx [Casino] [p]roperty at a fair and mutually agreed upon price to be used for a commercial development." R.R. at 346a. The Commission specifically asserts that Kennedy's lack of knowledge as to the "reasons" why Parx Casino would permit the easement undermines his reliance on the Bonner Affidavit. *Id.* Further, it challenges Kennedy's reliance on the Bonner Affidavit because Kennedy did not know what Bonner meant by his use of the phrase, "a fair and mutually agreed upon price . . . ." *Id.* Notably, Kennedy's lack of knowledge regarding Parx Casino's motive for granting an easement is irrelevant. A buyer is not required to know a seller's motives for selling. Thus, the Tarlinis' Experts were not required to know why Parx Casino would be willing to grant an easement. Kennedy's inability to provide such justification does not undermine the Bonner Affidavit's representation

17

that the Tarlinis would have been able to obtain an easement. Further, price specificity was not required in the Bonner Affidavit, as it would be unreasonable to expect a land owner whose property is subject to condemnation to expend a neighboring landowner's time and resources negotiating an unnecessary easement. Notwithstanding, as the Pennsylvania Superior Court recognized in *Primavera*, "[i]f an expert has made faulty assumptions or leaps of judgment in relying on certain sources or in forming conclusions based on those sources, **these issues are the proper subject of cross-examination**." *Id.* at 521 (emphasis added). Here, the Commission had the opportunity to cross-examine the Tarlinis' Experts.

Importantly, the Tarlinis' Experts' opinions regarding Property access were not based solely on the Bonner Affidavit. Kennedy did not rely exclusively on the Bonner Affidavit to conclude that access to the Property would be reasonably available. Kennedy explained that most of the development projects with which he has been involved have required some kind of easement from a neighboring property. Kennedy further stated, "[i]t's actually unusual if no easements are required." R.R. at 92a. Kennedy testified:

> I looked at the [P]roperty to see if . . . Parx Casino[] was utilizing that area. [It was] not utilizing that area.
>
> Furthermore, the location of a driveway would not infringe on [its] main operation and use of [its] property, which was the casino and racetrack business. It would not affect that business at all.
>
> The township is trying to encourage further development of that district, that area, that property[.]

R.R. at 94a. Thus, it is reasonable that Kennedy relied upon the statements in the Bonner Affidavit, in that they were consistent with Kennedy's personal observations, and they added additional information upon which Kennedy based his conclusion that access was reasonably available.

18

Further, Quinn testified that he had appraised the Parx Casino racetrack several times and knew Bonner. He explained that the portion of the Parx Casino property that would have accommodated the driveway had been wooded, undeveloped and unused since the 1980s. He believed it was reasonably probable that a buyer or developer could have obtained a driveway easement from Parx Casino "primarily based on [his] conversations with [] Bonner." R.R. at 181a. He stated that the Bonner Affidavit was consistent with his understanding that Parx Casino would likely have granted the Tarlinis an easement.

Moreover, the Commission objects to the trial court's suggestion that Section 1105 of the Code's more lenient admissibility standard permitted the use of the Bonner Affidavit. The Pennsylvania Supreme Court has explained:

> In 1964, in response to such precedent, the General Assembly made changes to the [Code] which substantially broadened the scope of admissible evidence, thus easing evidentiary restrictions for determining fair market value of a property. *See* 26 Pa.C.S. § 1105(1), Joint State Government Comm[']n Comments - 1964. Specifically, [Section] 1105(1) [of the Code] provides a qualified valuation expert may 'state *any or all facts and data* which the expert considered in arriving at an opinion[.]' 26 Pa.C.S. § 1105(1) (emphasis added). Further, [Section] 1105(2) [of the Code] provides a qualified valuation expert may 'testify in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis[.]' [26 Pa.C.S.] § 1105(2). The General Assembly makes clear this section is intended 'to change existing law which severely restricts the testimony of the expert witness on the ground that 'collateral issues' are introduced.' *Id.* . . . , Joint State Government Comm[']n Comments - 1964. The General Assembly's liberalization of the [Code] explicitly permits testimony that may introduce 'collateral issues'. . . .

*Lower Makefield Twp. v. Lands of Dalgewicz*, 67 A.3d 772, 775-76 (Pa. 2013) (footnotes omitted). The Court further stated:

Despite the Code's liberalization of the receipt of expert evidence concerning property value, the 1964 legislation did not purport to override all evidentiary restrictions on expert testimony. Those limitations, which are codified in the Rules of Evidence this Court adopted in 1998, include certain restrictions pertaining to expert testimony. Under Rule 703, for example, the underlying facts or data relied on by the expert 'need not be admissible in evidence.' Pa.R.E. 703. Additionally, under Rule 705, '[t]he salient facts relied upon as the basis of the expert opinion must be in the record so that the jury may evaluate the opinion.' Pa.R.E. 705, Official Comment (citing *Commonwealth v. Rounds*, . . . 542 A.2d 997, 999 (Pa. 1988) ('At the heart of any analysis is the veracity of the facts upon which the [expert's] conclusion is based. Without the facts, a jury cannot make any determination as to validity of the expert's opinion.')).

*Lower Makefield*, 67 A.3d at 776 n.5. Such expert testimony under the Code "must be subject to the limitation that neither an expert witness nor the condemnee . . . can testify to facts and data which are not judicially relevant and competent." *Scavo v. Dep't of Highways*, 266 A.2d 759, 762 (Pa. 1970).

In the instant matter, the trial court clearly explained:

The evidence provided by the [Bonner] Affidavit is **directly related** to whether Parx Casino would have allowed an easement over its property, therefore, it was a consequence in determining the action and is relevant evidence. Furthermore, the [Bonner] Affidavit came into evidence with qualifications and instructions to the jury, which were not objected to nor have they since been challenged. This [c]ourt found that the [Bonner] Affidavit was properly admitted as **one of the basis** of an expert's opinion and was relevant to the subject matter before the [c]ourt.

1925(a) Opinion at 9 (emphasis added; footnote omitted).[9] For these reasons and based on the record evidence, this Court concludes that the trial court did not abuse

---

[9] The Commission also notes that the Bonner Affidavit was introduced through a land planner (Kennedy) rather than the Tarlinis' appraiser (Quinn). The Commission contends that since Section 1105 of the Code applies to "qualified valuation expert[s,]" that Section is inapplicable

its discretion by permitting Kennedy to read the Bonner Affidavit during his testimony.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

here. 26 Pa.C.S. § 1105. However, "[t]he determination of whether a witness is a 'qualified valuation expert' is a matter within the sound discretion of the trial court." *McGaffic v. Redevelopment Auth.*, 732 A.2d 663, 672 (Pa. Cmwlth. 1999). In the instant case, the trial court repeatedly referred to Kennedy as an expert qualified to testify as to the feasibility of the Tarlinis' claimed highest and best use of the Property. There being no basis on which this Court could declare that the trial court abused its discretion in reaching that conclusion, the Commission's argument is without merit.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Condemnation by the         :
Pennsylvania Turnpike Commission    :
of Property Located in the Township    :
of Bensalem (Incorrectly Identified as   :
the Township of Bristol in the Notice to :
Condemnees), Bucks County,        :
Commonwealth of Pennsylvania,      :
for the I-95 Interchange Project       :
(Parcel ID No. 02-033-004)        :
                                  :
                v.             :
                                  :
The Lands of Lewis Tarlini and Louise :
Ann Tarlini, Husband and Wife, of    :
Bensalem Township, The Eminent    :
Domain County of Bucks,         :
Commonwealth of Pennsylvania,     :
Condemnees                 :
                                  :
Appeal of: Pennsylvania Turnpike   :    No. 1131 C.D. 2017
Commission               :

## O R D E R

AND NOW, this 10th day of April, 2018, the Bucks County Common Pleas Court's June 16, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge