Max Nobel and Helen Nobel, his wife, Appellants
*v.* West Penn Power Company, Appellee.

Argued May 3, 1978, before President Judge Bow-
man and Judges CRUMLISH, JR., WILKINSON, JR., MEN-
CER, ROGERS and BLATT.   Judge DiSALLE did not par-
ticipate.

Homer W. King, with him Henry R. Beeson, for appellants.

Robert L. Webster, with him Webster, Hallal & Webster, for appellee.

OPINION BY JUDGE MENCER, July 19, 1978:

On April 19, 1963, Max Nobel and Helen Nobel, his wife (appellants) acquired from Marjorie B. Boyd, a widow, 251 acres of land in Fayette County. The purchase price was $6,301.26. On April 15, 1965, the West Penn Power Company (appellee) filed a bond in condemnation to acquire a right-of-way for the purpose of erecting one transmission tower and multiple high-tension power lines across a section of the appellants' land. The area affected by the right-of-way was 10.789 acres, and appellants may use this acreage in any manner which does not interfere with the transmission tower and power lines.

A board of view, after hearing, awarded damages to the appellants in the amount of $10,000. Appellants appealed this award, and, after trial in the Court of Common Pleas of Fayette County, a jury returned a verdict for the landowners in the amount of $4,060. Appellants' motion for a new trial was denied and this appeal followed. We affirm.

Appellants raise six questions on this appeal: Was it fundamental error for the court below to charge the jury that appellee contended no economic loss to appellants, contrary to testimony? Was it error to permit a witness for appellee to testify as an expert mining engineer over objection? Was it prejudicial error

to refuse rebuttal evidence of appellants to refute part of appellee's defense? Was the verdict contrary to the evidence? Was the verdict inadequate? And was the refusal to admit evidence of separate value of coal a deprivation of appellants' constitutional guarantee? The first question we must decide is which of these issues are properly before us.

Because appellants failed to specifically object to the trial court's instruction that appellee contended no economic loss to appellants, we will not consider this allegation of error. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). Appellants' post-trial motion for a new trial did not raise the issues concerning the propriety of permitting a witness to testify as an expert mining engineer and the refusal of certain proffered rebuttal evidence. Appellants therefore are precluded from raising those issues on appeal. Issues not properly raised and preserved in the trial court will not be reviewed for the first time on appeal. *Commonwealth v. Reid*, 458 Pa. 357, 326 A.2d 267 (1974). A litigant must do two things in order to preserve an issue. First, he must make a timely, specific objection at trial and, second, he must raise the issue on post-trial motion. *Commonwealth v. Keysock*, 236 Pa. Superior Ct. 474, 345 A.2d 767 (1975).

Before turning our attention to the remaining issues, we take note that a motion for a new trial is addressed to the discretion of the trial court, based on the circumstances of the particular case, and the court's action in granting or refusing such a motion will not be reversed in the absence of a manifest abuse of discretion or a clear error of law. *Beyrand v. Kelly*, 434 Pa. 326, 253 A.2d 269 (1969). The trial court's discretion in this regard is not absolute but is subject to appellate review. *Austin v. Ridge*, 435 Pa. 1, 255 A.2d 123 (1969).

Was the Verdict Contrary to the Evidence?

Our examination of the extensive record in this case satisfies us that the verdict is not against the weight of the evidence. We are in accord with the trial court's assessment of the record relative to this issue and set forth here a portion of that assessment:

The Condemnee, Max Nobel, testified as an owner that he acquired the subject premises for $6,301.26, that no improvements were made to the subject premises except the planting of some pine trees that were not affected by the taking. The condemnation occurred approximately two years later. The owner was permitted to testify as an owner that the value of the property before the taking was $2,450,000.00. This is $2,443,698.74 more than he paid for it some two years earlier. He also testified that the value after the taking was $1,400,000.00 for a loss to him of $1,050,000.00.

Harry Whyel testified that the fair market value of the lot prior to the taking was $2,060,-000.00, the value after the taking was $1,420,-000.00, with a loss to the Condemnees in the amount of $640,000.00. Mr. Whyel is an expert in the field of mining and has had considerable experience in buying land underlaid with coal.

Robert Berish, a real estate broker who was admitted to be an expert by the Condemnees in the field of real estate, testified that at the time of the taking the real estate had a value of $15,000.00 and after the taking had a value of $11,500.00, with damages in the amount of $3,-500.00 to the Condemnees.

Albert Sesler, another real estate expert for the West Penn Power Company who was also acknowledged by the Condemnees to be an ex-

pert in the field of real estate, testified that the property was valued at $16,500.00 before the taking and $13,000.00 after the taking, with damages to the owners in the amount of $3,500.00.

There has never been such a wide divergence of opinion as to the damages in any case in condemnation heard before this Court prior to this date.

In determining the fair market value of the land prior to the taking and as affected thereby, the real issue, on which testimony was offered by both the experts for the West Penn Power Company and for the Condemnees, is to what extent coal could be mined under the transmission line and to what extent it affected the ability to economically mine the coal under the remaining land not within the area appropriated.

Russell Mechling, a mining engineer, testified that there was approximately 650,000 tons of the Sewickley seam of coal outcropping near the power line and under the area that the power line crosses, there was about one and one-half million tons of Redstone coal underlying nearly the entire 257 acre tract and approximately 1.6 million tons of Pittsburgh seam of coal underlying the entire tract.

Basically, the Condemnor's testimony was confined solely to the proposition that if it was economically feasible to mine the coal prior to the condemnation, it was economically feasible to do so afterward.

The respective witnesses for the West Penn Power Company and the Condemnees offered contradictory opinions on this issue. It created a question of credibility which the jury resolved

in favor of the Condemnor. The jury viewed the premises, which is evidence which may be considered by them in fixing their value. Also, they may consider the purchase price which in this case was $6,301.26, as determinative of the value of the land on the date of the taking. Klick vs. Department of Transportation, 20 Commonwealth Court 627 (1975).

Although the testimony of the Condemnees, if accepted by the jury, would indicate a tremendous loss to the Condemnees, the issue as presented to the jury was as previously stated, that is the ability to mine the coal prior to the taking and as affected by the taking. There was sufficient credible evidence from which a jury could make the determination that the ability to mine the coal was not affected to any greater extent than the damages awarded.

In *Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 289, 265 A.2d 516, 518 (1970), we find the following:

A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

Our sense of justice is not shocked by a review of the verdict and record in this case, and we sense no imperative need to afford right another opportunity to prevail.

## Was the Verdict Inadequate?

Here the verdict of the jury was between the valuations of the experts who testified, and, although the variation in their valuations was extreme, it was nevertheless a question for the jury to resolve. The

jury, following a view, obviously determined the experts for the appellee to be more credible. The purchase price of the condemned land, when, as here, admissible, is evidence of value. *Klick v. Department of Transportation*, 20 Pa. Commonwealth Ct. 627, 342 A.2d 794 (1975). This record reflects that the appellants purchased 251 acres on April 19, 1963 for $6,301.26; that, on April 15, 1965, less than two years later, appellee acquired the 10.789-acre right-of-way; and that no improvements were made to the area in question during the two-year period. Therefore, the jury verdict of $4,060 does not warrant being labeled unconscionable.

A court's denial of a motion for new trial in a condemnation case will not be interfered with unless "the verdict was so excessive or inadequate that the refusal of the court below to grant a new trial was a clear and manifest abuse of discretion or was unconscionable and shocking to the court's sense of justice." *Boring v. Metropolitan Edison Co.*, 435 Pa. 513, 524, 257 A.2d 565, 571 (1969). We find no basis on this record to interfere with the trial court's denial of a motion for a new trial.

## Does Refusal To Admit Evidence of Separate Value of Coal Deprive Appellants of Constitutional Guarantee?

Appellants would have us reverse *Werner v. Department of Highways,* 432 Pa. 280, 247 A.2d 444 (1968). In *Werner*, it was held that the proper measure of damages for land taken under the power of eminent domain is the difference between the market value of the land before the exercise of the power and as unaffected by it and the market value immediately after the appropriation and as affected by it. It was also held that a condemnee may introduce evidence of the number of tons of minerals lost through the con-

584

demnation, although he may not then multiply that number by some dollar figure such as the market price or the royalty payment. We are convinced that the *Werner* holding is applicable here and does not deprive appellants of their constitutional right to just compensation for the right-of-way acquired by appellee here. *See Whitenight v. Department of Highways,* 1 Pa. Commonwealth Ct. 144, 273 A.2d 752 (1971).

In *Brown v. Commonwealth,* 399 Pa. 156, 159, 159 A.2d 881, 882 (1960), our Supreme Court stated: "Our rule for the measure of damages in condemnation proceedings is firmly entrenched in our law. Following this rule we have refused to allow evidence of particular items of damage, including the value of coal deposits. . . ." The court below properly applied this time-honored rule in refusing to admit testimony of the separate value of coal under the right-of-way area in question.

Order affirmed.

ORDER

AND Now, this 19th day of July, 1978, the order of the Court of Common Pleas of Fayette County, under date of August 23, 1977, refusing the motion for new trial by Max Nobel and Helen Nobel, is hereby affirmed.