Redevelopment Authority of the City of Chester, Appellant *v.* John Bosacco and L. J. Rendin, Appellees.

Argued April 5, 1979, before Judges MENCER, ROG-
ERS and CRAIG, sitting as a panel of three.

*Samuel M. Tollen*, with him *Tollen and Tollen*, for
appellant.

*Murray S. Eckell*, with him *Nicholas J. Emper*, and
*Eckell, Sparks, Vadino, Auerbach and Monte*, for ap-
pellee.

OPINION BY JUDGE CRAIG, September 27, 1979:
This is an appeal by the Redevelopment Authority
of the City of Chester (condemnor) from an order of
the Court of Common Pleas of Delaware County deny-

ing the condemnor's motion for a new trial in an eminent domain proceeding.

On March 16, 1976, the condemnor condemned a three-story office building in downtown Chester, owned by John Bosacco and L. J. Rendin (condemnees). After a hearing, a board of viewers awarded condemnees $120,000 in damages, plus $500 for counsel fees. The condemnor appealed to the lower court, pursuant to Section 515 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §1-515. A jury awarded the condemnees $205,000 in damages, and the lower court, by stipulation of the parties, added $500 for counsel fees. The condemnor then filed a motion for a new trial, which the lower court denied. This appeal followed.

The condemnor alleges numerous errors by the lower court: (1) refusing to permit one of the condemnor's valuation experts to testify; (2) refusing to permit the condemnor's other valuation expert to testify to the cost of repairs necessary to bring the property up to rental condition; (3) allowing testimony of an offer by a Donald Tonge to buy condemnees' property, their counteroffer to sell, and the amounts of the offer and counteroffer; (4) refusing to permit the condemnor's attorney to comment to the jury both about the condemnees' failure to call Tonge as a witness, and the condemnees' failure to produce their business records at the trial; (5) excluding testimony on the price the condemnees paid for the property when they purchased it; (6) refusing to find the verdict to be excessive; and (7) permitting one of the condemnees to testify on the reproduction cost of the property.

We reverse the lower court's denial of a new trial on the basis of the first two issues raised.

Condemnor's first issue is that the lower court erred in not permitting condemnor's valuation expert

Klein to testify. The condemnor offered Klein both to present his own valuation opinion and to rebut condemnee Bosacco's reproduction cost valuation. However, at an *in camera* proceeding, the lower court ruled that Klein could not take the witness stand at all, because, in arriving at his valuation, Klein had considered the imminence of condemnation, contrary to the lower court's interpretation of Section 604 of the Code, 26 P.S. §604. We disagree with the lower court as a matter of law.

Section 604 states:

> Any change in the fair market value prior to the date of condemnation which the condemnor or condemnee establishes was substantially due to the general knowledge of the imminence of condemnation, other than that due to physical deterioration of the property within the reasonable control of the condemnee, *shall be disregarded* in determining fair market value. (Emphasis supplied.)

Apparently, the lower court interpreted Section 604 to mean that a valuation expert cannot even *consider* the imminence of condemnation in arriving at a value. However, we believe that the word "disregarded" in Section 604 implies that changes in value because of imminence of condemnation must in the first instance be considered by an expert, so that the expert can then disregard or discount that change in value. When, as here, a commercial property is sitting vacant, a valuation expert cannot ignore that fact in valuing the property. However, if in exercising his expertise he determines that the property is vacant because of the imminence of condemnation, then he must disregard the decrease in value caused by the property's nonuse.

A careful reading of the *in camera* examination of Klein indicates that in fact he considered the immi-

nence of condemnation in the first instance, so that he could discount the diminution of value caused by the imminence of condemnation.

The comment to Section 604 by the Joint State Government Commission supports our conclusion by implication, stating:

> In many cases, condemnees suffer an economic loss because of an announcement of the proposed condemnation by the condemnor prior to the actual condemnation. Where such announcement is made and publicized, which may be several years before the actual condemnation, the tenants of the condemnee move out or fail to renew their leases and new tenants cannot be obtained because of the proposed condemnation. Under these conditions, the property which is to be condemned is economically deteriorated through no fault of the owner-condemnee, and as a consequence, at the time of actual condemnation, the amount of damages may be affected to the detriment of the innocent condemnee because of lack of tenants or because the condemnee was forced to rent at lower rentals for shorter terms. *This section permits the condemnee to show these economic circumstances* in order to prove what his damages actually are at the date of taking. (Emphasis supplied.)

If the condemnee is entitled to show the effect of the imminence of condemnation, then by implication the condemnor's expert also must be permitted to consider the imminence of condemnation in order to give an accurate valuation by eliminating it.

Section 517 of the Code, 26 P.S. §1-517, states that the condemnee is the plaintiff and the condemnor is the defendant in the lower court. Therefore, the condemnee presents his evidence first. Once he offers evi-

dence of diminution of value because of the imminence of condemnation, as the condemnees did here, then to affirm the lower court's ruling, that the condemnor's experts are made incompetent if they considered the imminence of condemnation, would be to strip condemnor of the ability to rebut the condemnee's testimony.

The Statutory Construction Act, 1 Pa. C.S. §1922, states: "In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used: (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." To deny the condemnor the opportunity to rebut testimony as to the effect on value of the imminence of condemnation would be unreasonable.

Moreover, our interpretation is further supported by comparing the phrase "shall be disregarded" in Section 604 with the language of Section 705 of the Code, 26 P.S. §1-705, which states that assessed valuations are "not . . . admissible" in contrast to Section 604 which states that change in value due to imminence of condemnation shall be *"disregarded."*[1]

As stated in E. Snitzer, *Pennsylvania Eminent Domain*, §705(1)-1.3, "not all testimony considering improper elements will be stricken. The test is whether

---

[1] Section 705 of the Code states:

    [W]hether at the hearing before the viewers, or at the trial in court on appeal:

   . . . .

   (2) A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, reproduction costs or capitalization basis, which testimony may include but shall not be limited to the following:

   (i) The price and other terms of any sale or contract to sell the condemned property or comparable property *made within a reasonable time before or after the date of condemnation.* (Emphasis supplied.)

the factors considered were those of relevance, or of competence.''

Section 705(4) makes assessed valuation incompetent evidence. However, *e.g.*, if a valuation expert considers the sale price of alleged comparable property, but the property is shown not to be comparable, the question becomes one of relevance. E. Snitzer, *supra*. Because Section 604 requires that changes in value due to imminence of condemnation be disregarded, such factors go to relevance, not competence. Therefore, the lower court erred in refusing to permit Klein to testify, an error which could have substantially affected the outcome.

The second issue, that the lower court erred by refusing to permit condemnor's other valuation expert to testify that $25,000 in repairs would be necessary to bring the property to rentable condition, is also valid. The comment to Section 604 states: "Physical deterioration of the property which may occur because of the imminence of the condemnation *is also to be disregarded* in determining fair market value if the condemnee has acted reasonably in maintaining and protecting his property.'' (Emphasis supplied.)

Whether or not the property had deteriorated, and the reason for the deterioration, were, like the overall value of the property, conclusions which the condemnor had the right to attack. Section 705 states:

Whether at the hearing before the viewers, or at the trial in court on appeal:

(1) A qualified valuation expert may, on direct or cross-examination, state any or all facts and data which he considered in arriving at his opinion, whether or not he has personal knowledge thereof, and his statement of such facts and data and the sources of his information shall be subject to impeachment and rebuttal.

Therefore, the lower court erred in refusing to allow that testimony.

The other issues raised by condemnor are without merit.

We must dismiss the condemnor's third issue because it was not preserved for appeal. The manager of the condemned property testified that in 1969 he and the condemnees had negotiated with Donald Tonge for the sale of the property, and that Tonge made an offer to buy the property for $150,000, which the condemnees rejected, making a counteroffer of, $200,000. Condemnor's attorney failed to object to this testimony at the trial.[2] Therefore, he did not preserve it for appeal, and we cannot consider it. *Nobel v. West Penn Power Co.*, 36 Pa. Commonwealth Ct. 577, 388 A.2d 781 (1978).

The fourth issue is that the lower court erred in sustaining two objections made by condemnees to comments made by condemnor's attorney during his closing statement to the jury. Condemnor's attorney argued that the jury should infer that Tonge, if called, would have testified adversely to the condemnees. He made a similar comment in reference to the failure by the condemnees to have their business records relating to the management of the condemned property available at the trial. The court sustained condemnees' objections to those comments.

The lower court properly ruled that the condemnor's attorney could not comment on the failure of the condemnees to call Tonge because he was only to have

---

[2] We note, however, that an offer by a property owner to sell, if not too remote in time, may be admitted into evidence as an admission by the property owner of what he considered the value of his property to be at the time of the offer. Of course, the trial court must exercise its discretion to determine remoteness. *Department of Transportation v. Bellas*, 14 Pa. Commonwealth Ct. 293, 321 A.2d 418 (1974).

been called to testify that he made an offer to condemnees, and to the amount of his offer. The manager of the condemned property had already testified to amounts of the offer and counteroffer, which testimony was not objected to. Therefore, Tonge's testimony would merely have been cumulative, and was unnecessary. *Nelson v. Facciola,* 197 Pa. Superior Ct. 502, 179 A.2d 258 (1962).

The lower court also properly ruled that the condemnor's attorney could not comment on the failure of condemnees to have their business records available at the trial. The condemnor could have subpoenaed the records, or even demanded them at the trial. *Gallizzi v. Scavo,* 406 Pa. 629, 179 A.2d 638 (1962). It did not do so. Therefore, the condemnor's attorney could not have the jury draw any inference from the condemnees' failure to produce the records.

The fifth contention of the condemnor, that evidence of the purchase price paid by the condemnees for the property in 1965 should have been admitted, is also without merit. Section 705 of the Code, 26 P.S. §1-705, permits a valuation expert to testify to the price of any sale made within a reasonable time before condemnation. At the start of the trial, the lower court ruled that no evidence on the price paid by the condemnees for the property in 1965 would be permitted. We will not disturb the lower court's ruling unless it manifestly abused its discretion or committed an error of law which affected the outcome of the case. *Brown v. Redevelopment Authority of the City of Harrisburg,* 35 Pa. Commonwealth Ct. 415, 386 A.2d 1052 (1978). Because the lower court based its ruling on the fact that eleven years had passed between the condemnees' purchase of the property and the condemnation, coupled with the increase in real estate values during that period, it could properly have found the price paid by condemnees in 1965 to have

been too remote. Therefore, that finding was not error. *Commonwealth v. Fox,* 16 Pa. Commonwealth Ct. 23, 328 A.2d 872 (1974).

Sixth, the condemnor argues that the jury verdict was excessive and against the law, pointing primarily to the disparity between it and the board of viewers' award. Although the award of viewers is an important circumstance to be considered, it is not the controlling factor. *Stoner v. Metropolitan Edison Co.,* 439 Pa. 333, 266 A.2d 718 (1970). In the present case, the valuation testimony presented by both sides was proper and admissible. Moreover, the jury award was closer to condemnor's valuation testimony than to condemnees' valuation testimony. Therefore, the verdict was not so excessive that the refusal of the lower court to grant a new trial was a clear and manifest abuse of discretion. *Stoner, supra.*

Finally, the condemnor argues that the reproduction cost approach, used by the condemnee Bosacco to value the property, was improper in the present case. Once again, the condemnor did not object to the presentation of that evidence, and we therefore cannot decide it.[3] *Nobel, supra.*

We reverse the order of the lower court, and remand this case for a new trial.

## ORDER

AND Now, this 27th day of September, 1979, the Order of the Court of Common Pleas of Delaware County, No. 76-3084, is reversed, and the case is remanded for a new trial consistent with this opinion.

---

[3] However, Section 705 permits the use of reproduction cost. *See* note 1, *supra.* Also, an owner of condemned property may testify on reproduction cost, if he used it in arriving at an estimate of value. *Faith United Presbyterian Church v. Redevelopment Authority,* 7 Pa. Commonwealth Ct. 490, 298 A.2d 614 (1972).