IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Vestmont Limited Partnership,      :
Vestmont Limited Partnership II,      :
Vestmont Limited Partnership III      :
t/d/b/a Montgomery Square      :
Partnership,      :    No. 811 C.D. 2022
              Appellants    :    Submitted: March 3, 2023
     :
       v.            :
     :
Department of Transportation      :

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE DUMAS                             FILED: October 6, 2023

       Vestmont Limited Partnership, Vestmont Limited Partnership II, and Vestmont Limited Partnership III, trading and doing business as Montgomery Square Partnership (collectively, Vestmont), appeal from the judgment entered by the Court of Common Pleas of Montgomery County (trial court). On appeal, Vestmont contends that the trial court erred by admitting evidence affecting the calculation of the condemned property's fair market value in favor of the Pennsylvania Department of Transportation (PennDOT). We affirm.

## I. BACKGROUND[1]

### A. Brief History

       Because we write for the parties, we need not exhaustively recount the

---

[1] In reviewing the denial of a post-trial motion, we view "the evidence and all reasonable inferences therefrom in the light most favorable to the verdict winner." *The Bert Co. v. Turk*, 298 A.3d 44, 49 n.5 (Pa. 2023).

lengthy history of this case, which began in 2008. In the 1980s, PennDOT and other municipalities needed to solve traffic congestion on Route 202. Trial Ct. Op., 6/30/22, at 1-2. One proposed solution was to construct a bypass of Route 202 in Montgomery Township, Montgomery County. *Id.*

In 1995, Vestmont entered an agreement of sale to purchase the property at issue, but the parties did not immediately execute the sale. *Id.* at 2. At that time, the property was zoned for industrial, commercial, and residential use, *i.e.*, the underlying zoning. *Id.* In 1996, the Montgomery Township Board of Supervisors (Township) enacted the Expressway Corridor Preservation Overlay District (Expressway Zone). *Id.* at 2.[2] Accordingly, Vestmont could develop its property at a higher density in exchange for keeping a portion of its property open for 25 years for the then-proposed Route 202 bypass. *Id.* at 2-3. Because the Route 202 bypass plan was not finalized, the Expressway Zone designation did *not* guarantee condemnation. *Id.* at 3.

Subsequently, the seller of the property and Vestmont jointly filed a conditional use application for the property with the Township.[3] Property "owners

_____

[2] "An overlay district creates a framework for conservation or development allowing for a new type of development or imposing restrictions that is superimposed over the zoning districts on all or part of a municipality. The purpose of an overlay district is to create specific and targeted provisions that conserve natural resources or realize development objectives without unduly disturbing the expectations created by the existing zoning ordinance. In other words, overlay districts supplement existing zoning districts, [but] they do not supersede them either in fact or in practice." *Protect PT v. Penn Twp. Zoning Hearing Bd.*, 220 A.3d 1174, 1187 (Pa. Cmwlth. 2019) (cleaned up). The parties do not dispute that the Expressway Zone is a form of zoning. *See* Vestmont's Br. at 4 (referencing the Expressway Zone as a "zoning overlay"); PennDOT's Br. at 4 (same).

[3] Generally, "a conditional use is a form of permitted use. Accordingly, a nonconforming airport becomes a permitted use when the property is rezoned to permit an airport as a conditional use." R. Ryan, Pa. Zoning Law & Prac. § 5.1.4 (2023) (Pa. Zoning Law). "The existence of a conditional use provision indicates legislative acceptance of the proposition that the use is consistent with the zoning plan and should be denied only where the adverse impact on the public

who owned property suitable for use as the bypass could apply, pursuant to the [Expressway Zone], to receive higher intensity zoning on portions of their property in return for keeping other portions of their land open for twenty-five (25) years for the proposed bypass." *Id.* at 2. In exchange for the 25-year moratorium,[4] such property owners, with respect to their remaining land, "received conditional use approval allowing for high density development and alternative use zoning." *Id.* at 2-3 (footnote omitted). The Township granted the application. *See, e.g.*, N.T. Trial, 3/31/22, at 74. In 1998, Vestmont executed the 1995 agreement of sale. Trial Ct. Op. at 2 n.2.

Eventually, in 2008, PennDOT filed a declaration of taking on part of Vestmont's property for the Route 202 bypass. *Id.* at 3. PennDOT paid Vestmont around $6 million. *Id.* Dissatisfied with the amount, Vestmont successfully petitioned to appoint a Board of Viewers. *Id.* Following a hearing, the Board of Viewers awarded additional compensation, for a total sum of around $7 million. Rpt. of the Bd. of View & Award, 11/17/16, ¶ 14. Vestmont timely appealed and requested a jury trial *de novo*. 42 Pa.C.S. § 5571; 26 Pa.C.S. § 517(b).

Prior to trial, Vestmont filed motions *in limine* to preclude, as not relevant, references to the Expressway Zone and the conditional use application.

---

interest exceeds that which might be expected in normal circumstances." *In re Appl. for Conditional Use Approval of Saunders*, 636 A.2d 1308, 1310-11 (Pa. Cmwlth. 1994) (citation omitted).

[4] To be clear, it was the Township, and not PennDOT, that imposed the 25-year moratorium on construction as a condition. We add that the parties apparently equated the moratorium with general knowledge of an imminent condemnation. Vestmont argued that all experts allegedly agreed that the enactment of the 25-year moratorium signaled "classic imminence of condemnation." Notes of Testimony (N.T.) Trial, 3/29/22, at 4; *accord* Exs. P-1, at 3 (referencing general public knowledge of imminent condemnation without specifying a particular date), P-8, at 2. *But see* N.T. Trial, 3/30/22, at 90 (noting that even in 2004, "it was questionable as to whether" the Route 202 bypass would proceed).

3

Vestmont's Mot. *in Limine* to Exclude Improper References, 12/13/19, ¶ 30; Vestmont's Omnibus Mot. *in Limine*, 12/26/19, ¶ 42. The trial court granted in part and denied in part the motions. N.T. Trial, 3/29/22 (afternoon), at 18-23.[5] Specifically, in relevant part, the court permitted references to the Expressway Zone "to the extent that the property was subject to and not developed due to the" zoning. *Id.* at 19. The court also allowed references to the Expressway Zone "to rebut, to prove or disprove the probability of changes in zoning to determine the highest and best use of the property[.]" *Id.*

**B. Relevant Expert Testimony**

At the four-day trial, the parties presented several expert witnesses. Trial Ct. Op. at 7. In relevant part, for Vestmont, John Kennedy testified that he disregarded the Expressway Zone and opined that but for the condemnation, the land would have been rezoned to a mixed-use, "town center" type zoning. N.T. Trial, 3/30/22, at 85, 87, 131.[6] Vestmont also presented Michael Samuels, who similarly testified that he disregarded the Expressway Zone in arriving at a just compensation value of around $25 million. N.T. Trial, 3/31/22, at 14-16, 62, 64.[7] Samuels explained that his calculation relied on both his and Kennedy's conclusion that there was a reasonable probability of a zoning change to "town center" zoning. *Id.* at 28, 30-33.

---

[5] The trial court had originally granted in part and denied in part both motions. Order, 2/18/20. At trial, the court revisited the motions and, following the parties' arguments, amended its prior order. N.T. Trial, 3/29/22 (afternoon), at 2, 18-19.

[6] Kennedy did not testify about valuation. N.T. Trial, 3/30/22, at 87-88 (explaining that he was retained to opine on the highest and best use of the land pre- and post-condemnation but not the value of the condemned land). Kennedy added that even in 2004, "it was questionable as to whether" the Route 202 bypass would move forward. *Id.* at 90.

[7] Specifically, Samuels testified that he disregarded the Expressway Zone, including the 25-year construction moratorium. N.T. Trial, 3/31/22, at 16 (agreeing with counsel's question that it would "have been against the law to value [the property] with the" Expressway Zone). Samuels reasoned that without the Expressway Zone and the contemplated Route 202 bypass, the property "never would have been restricted" and would have been developed contemporaneously. *Id.*

4

On cross-examination, Samuels agreed that he investigated all potential uses of the property before proceeding to value the property based upon a zoning change to "town center" zoning. *Id.* at 99.

For PennDOT, David Brigidi similarly testified that he disregarded the Expressway Zone in arriving at his just compensation figure of around $7 million. *Id.* at 119. Brigidi explained that if he considered the Expressway Zone, then the property's highest and best use would be "passive recreation." *Id.* at 120. Because Brigidi believed that was unfair to Vestmont, he instead considered the underlying, preexisting zoning. *Id.* at 120-21. In Brigidi's view, the difference between his and Samuels' valuations was that Brigidi appraised the property "as zoned to its highest and best use with whatever rights it had remaining." *Id.* at 120. Brigidi criticized Samuels' valuation as speculative because Brigidi did not believe (1) there was any possibility of a change in zoning, and (2) anyone would purchase the property without a guarantee they could build notwithstanding the 25-year moratorium on construction. *Id.*[8]

### C. Subsequent History

In relevant part, the trial court charged the jury that "[z]oning regulations are a proper consideration in condemnation cases. Existing zoning is

---

[8] At trial, the parties' experts referred to their reports while testifying, but the parties did not move their experts' appraisal reports into evidence although those reports were part of the record transmitted to this Court. However, to provide context, we note the following, which is consistent with the experts' trial testimony. Samuels' pre-condemnation appraisal did not consider the property's preexisting "underlying" industrial, commercial, and residential zoning. Ex. P-10, at 3. Rather, Samuels' appraisal relied on Kennedy's opinion that the property would have been rezoned to "town center" zoning. *Id.* at 2 (stating "[b]efore the taking and absent [the Expressway Zone], it was reasonably probable that the subject [property] would have been rezoned to allow a mixed-use development of the property . . . ."). Samuels acknowledged the underlying, preexisting zoning, but did not present a valuation based on that zoning. *Id.* at 88, 90 (concluding that the highest and best use was "based on the reasonable probability of obtaining a zoning change" to permit the proposed "town center" zoning).

ordinarily controlling, unless there is sufficient probability of a change in zoning as to be reflected in the market prices of similarly zoned properties. Evidence that a reasonable probability of obtaining a change in zoning may be presented, and if established, considered by an expert in determining highest and best use. A use other than that allowed under existing zoning must be reasonably available after considering" various factors. N.T. Trial, 4/1/22, at 59. The court also instructed the jury to "disregard any change in the fair market value before the taking that is attributed to people knowing of the property's impending condemnation." *Id.* at 60.[9] After two hours of deliberation, the jury rendered a verdict and awarded compensation of $7,098,000. Verdict Sheet, 4/1/22.[10]

Vestmont timely moved for a new trial, asserting that the trial court erred in resolving the motions *in limine* to preclude references to the Expressway Zone and the conditional use application. Post-Trial Mot., 4/7/22, at 3-6; *see generally* Pa.R.Civ.P. 227.1(h). The trial court denied the post-trial motion. Order, 6/30/22. The trial court noted that Vestmont's witnesses disregarded the Expressway Zone per 26 Pa.C.S. § 704. Trial Ct. Op. at 7. The trial court, however, concluded that because the Expressway Zone "was the existing zoning" for the condemned land, the Expressway Zone was "a proper factor to be considered in determining fair market value based on the [condemned land's] 'present use.'" *Id.* at 7-8 (quoting 26 Pa.C.S. § 703(1)). In the trial court's view, because Vestmont ultimately purchased the property knowing it was encumbered by the Expressway Zone, Vestmont was a "willing buyer of the future potentially condemned property." *Id.* at 8.

---

[9] Although the charging conference was not transcribed, it does not appear Vestmont objected to the jury charge. Vestmont, however, has consistently argued to preclude references to the Expressway Zone and the conditional use application. *See* N.T. Trial, 3/29/22 (afternoon), at 18-23.

[10] The verdict reflected a single query to the jury to state the amount of just compensation.

Vestmont prematurely appealed from the order and timely filed a court-ordered Pa.R.A.P. 1925(b) statement raising six issues. The docket reflects that judgment was subsequently entered on the verdict, thus perfecting Vestmont's appeal.[11]

## II. ISSUE

Vestmont contends that the trial court erred by permitting evidence of the condemned property's pre-condemnation value. Vestmont's Br. at 2.

## III. DISCUSSION[12]

In support, Vestmont raises two interrelated arguments. Before

---

[11] *See Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 513 (Pa. Super. 1995) (*en banc*). We may cite to Superior Court or unreported decisions for their persuasive authority. *See* Pa.R.A.P. 126(b)(1); 210 Pa. Code §§ 65.37, 69.414(a); *Pa. State Police v. Madden*, 284 A.3d 272, 278 n.13 (Pa. Cmwlth. 2022). This Court did not order the trial court to supplement the record it previously transmitted to this Court. Order, 8/17/22.

[12] Our standard of review "in an eminent domain case is limited to a determination of whether the trial court abused its discretion or committed an error of law, and whether the findings of fact are supported by substantial evidence. Thus, we consider factual findings deferentially and resolve legal issues *de novo*." *Reading Area Water Auth. v. Schuylkill River Greenway Ass'n*, 100 A.3d 572, 576-77 (Pa. 2014).

In construing the Eminent Domain Code, 26 Pa.C.S. §§ 101-1106, we follow the rules of statutory construction. 1 Pa.C.S. §§ 1901-1991. Further, although the statutory text controls, the comments by the commission "which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly . . . ." *Id.* § 1939; Title 26 cmt. ("The comments provided throughout [the Eminent Domain Code], including those preceding its [current] 2006 enactment were supplied by the Pennsylvania Joint State Government Commission, and may be used in determining the intent of the General Assembly."). We may cite to cases that predate the applicable version of the Eminent Domain Code, which was initially enacted in 1964, as long as such cases do not conflict. *See In re Est. of Warden*, 2 A.3d 565, 572 n.1 (Pa. Super. 2010) (*Warden*) (noting we may rely on applicable cases predating the adoption of the Uniform Trust Code, 20 Pa.C.S. §§ 7701-7799.3, and the Rules of Evidence). *Cf. Lower Makefield Twp. v. Lands of Chester Dalgewicz*, 67 A.3d 772, 776 n.5 (Pa. 2013) (*Dalgewicz*) (explaining that certain Rules of Evidence still apply to expert testimony in a condemnation case).

We review the trial court's decision denying a new trial for an abuse of discretion or an error of law. *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1122-23 (Pa. 2000) (discussing the

summarizing Vestmont's initial argument, we briefly summarize the applicable law for context.

"A condemnee shall be entitled to just compensation for the taking, . . . of the condemnee's property . . . ." 26 Pa.C.S. § 701. "Just compensation" is defined as "the difference between [(1)] the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected by the condemnation and [(2)] the fair market value of the property interest remaining immediately after the condemnation and as affected by the condemnation." *Id.* § 702(a).

In turn, "fair market value" is defined as "the price which would be agreed to by a willing and informed seller and buyer." *Id.* § 703.[13] In calculating

---

two-step process for reviewing a trial court's decision resolving a request for a new trial). In relevant part, if the alleged mistake at trial was "an error of law, the [appellate] court will scrutinize for legal error." *Id.* at 1123. If the appellate court concludes that legal error occurred at the trial, "the appellate court must then determine whether the trial court abused its discretion in ruling on the request for a new trial." *Id.* For example, if the alleged legal error is the trial court's admission of evidence, then we would review that decision for an abuse of discretion or error of law. *See Dalgewicz*, 67 A.3d at 778; *Carlini v. Glenn O. Hawbaker, Inc.*, 219 A.3d 629, 639 (Pa. Super. 2019).

Finally, we may "affirm the decision of the trial court if the result is correct on any ground without regard to the grounds relied on by the trial court." *Mazer v. William Bros. Co.*, 337 A.2d 559, 562 n.6 (Pa. 1975); *accord Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 88 (1943) (same). In this context, it is well settled that this Court, in its appellate role, reviews judgments and other similar final orders. *See, e.g.*, Pa.R.A.P. 341; *Brew v. Hastings*, 55 A. 922, 925 (Pa. 1903) (*per curiam*). Thus, if we agree with the trial court's entry of judgment adverse to Vestmont, but disagree with the trial court's rationale, we may affirm on other grounds evident from the record. *See, e.g.*, *Mazer*, 337 A.2d at 562 n.6.

[13] *Accord Redevelopment Auth. of City of Phila. v. Lieberman*, 336 A.2d 249, 251, 253 (Pa. 1975) (defining "just compensation" as "compensation that will put the injured party in as good a condition as he would have been if the condemnation proceedings had not occurred," and agreeing with the proposition that the "owner is to be put in the same position monetarily as he would have occupied if his property had not been taken." (cleaned up)). A condemnor, the *Lieberman* Court noted, simply "desires to purchase from a condemnee the identical property rights" that a private party could purchase (if the property was on sale). *Id.* at 254.

the "fair market value," the fact finder must, at a minimum, consider at least four nonexclusive factors, including the "highest and best reasonably available use of the property and its value for that use." *Id.* § 703(2).[14] In identifying the "highest and best use" of the property, a party may conditionally invoke zoning as a relevant factor. *Id.* § 703(2) cmt.[15] Specifically, although evidence of the property's *existing* zoning ordinarily controls, "evidence may be given of a sufficient probability of a change in zoning as to be reflected in market prices of similarly zoned properties."

_____

[14] The remaining Section 703 factors are (a) "present use of the property and its value for that use," (b) "the machinery, equipment and fixtures forming part of the real estate taken," and (c) additional elements stated in 26 Pa.C.S. §§ 1101-1106. 26 Pa.C.S. § 703(1), (3)-(4).

[15] The Section 703(2) comment explains that this factor

> permits the traditional consideration of the property's value for the highest and best use to which it is adapted and capable of being used, provided such use is reasonably available. If it is claimed that the property is more valuable for a use other than its existing use, it should be shown that such use is reasonably available after considering the existing improvements, the demand in the market, the supply of competitive property for such use, the *zoning* and all other reasonably pertinent factors. Existing zoning would ordinarily be controlling, but evidence may be given of a sufficient probability of a change in zoning as to be reflected in market prices of similarly zoned properties.

26 Pa.C.S. § 703 cmt. (emphasis added); *see generally* 1 Pa.C.S. § 1939; Pa. Eminent Domain § 4.5.7 (2023) (stating "[e]xisting zoning is ordinarily controlling unless there is sufficient probability of a change in zoning as to be reflected in market prices of similarly zoned properties").

Our Supreme Court has suggested that for eminent domain purposes, when property is condemned, the definition of property not only includes the physical land, but the landowner's "rights of use, enjoyment, and disposition" of the land. *Lieberman*, 336 A.2d at 252 (summarizing, *inter alia*, 2 Nichols on Eminent Domain § 5.1(1) (1970), and Joseph M. Cokmack, *Legal Concepts in Cases of Eminent Domain*, 41 Yale L. J. 221, 223 (1931)). The *Lieberman* Court explicitly defined property, in the eminent domain context, as encompassing "every sort of interest which a citizen may possess." *Id.* at 253-54 (citing *United States v. Gen. Motors Corp.*, 323 U.S. 373, 377 (1945), and *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470 (1973)). The Eminent Domain "Code specifically permits a consideration of values which accrue to physical property as a result of the use that a property owner makes or may reasonably make of his physical property." *Id.* at 255. It would seem to follow that if the fact finder could consider sufficiently probable zoning changes, 26 Pa.C.S. § 703(2) cmt., then a fact finder could consider other sufficiently probable rights of use. *See Lieberman*, 336 A.2d at 255.

9

26 Pa.C.S. § 703(2) cmt. (citing *Snyder v. Commonwealth*, 192 A.2d 650 (Pa. 1963)).[16]

Finally, a property's pre-condemnation "fair market value" must exclude any effect of the knowledge of the property's imminent condemnation. *See* 26 Pa.C.S. § 704.[17] The purpose behind Section 704 is not to penalize or reward a condemnee for any economic loss or gain caused by "an announcement of the proposed condemnation by the condemnor prior to the actual condemnation." *Id.* cmt.; *see generally* 1 Pa.C.S. § 1939.[18] We acknowledge that the Eminent Domain

---

[16] The *Snyder* Court stated that it "is quite clear that one factor which strongly affects market value of property is [(1)] zoning *as it exists* at the time of purchase or condemnation *and* [(2)] as it may be changed in the reasonably *near* future to permit economically higher (or lower) use." *Snyder*, 192 A.2d at 652 (emphases added); *see generally Warden*, 2 A.3d at 572 n.1.

[17] Section 704 provides in full: "Any change in the fair market value prior to the date of condemnation which the condemnor or condemnee establishes was substantially due to the general knowledge of the imminence of condemnation, other than that due to physical deterioration of the property within the reasonable control of the condemnee, shall be disregarded in determining fair market value." 26 Pa.C.S. § 704.

[18] The comment to Section 704 of the Eminent Domain Code, follows, in relevant part:

> In many cases, condemnees suffer an economic loss because of an announcement of the proposed condemnation by the condemnor prior to the actual condemnation. Where such announcement is made and publicized, which may be several years before the actual condemnation, the tenants of the condemnee move out or fail to renew their leases and new tenants cannot be obtained because of the proposed condemnation. Under these conditions, the property which is to be condemned is economically deteriorated through no fault of the owner-condemnee, and as a consequence, at the time of actual condemnation, the amount of damages may be affected to the detriment of the innocent condemnee because of lack of tenants or because the condemnee was forced to rent at lower rentals for short terms. This section permits the condemnee to show these economic circumstances in order to prove what his damages actually are at the date of taking. On the other hand, in many cases an announcement of the proposed condemnation causes an inflation of property values and as a result the condemnor may have to pay more for the condemned property. The condemnor may show this increase in the value of the condemned property. Any decline or increase in the fair market value caused by the general knowledge of the imminence of the condemnation is to be disregarded.

26 Pa.C.S. § 704 cmt.

Code does not appear to account for zoning that seemingly signals "imminent" condemnation, such as the Expressway Zone.[19]

Having briefly distilled the Eminent Domain Code, we also recap the parties' experts' valuation testimony to provide context for Vestmont's initial argument. As discussed above, Vestmont's and PennDOT's experts testified they disregarded the Expressway Zone in calculating the property's pre-condemnation fair market value. The difference between the experts' valuations is that Vestmont's valuation was based solely upon a change in the zoning. *See* N.T. Trial, 3/31/22, at 28, 30-33. Vestmont did not present an alternative valuation derived from the property's preexisting zoning. In contrast, PennDOT's valuation was based on the preexisting zoning. *See id.* at 120-21; *see also Protect PT*, 220 A.3d at 1187 (explaining that overlay districts, like the Expressway Zone, do not supersede preexisting zoning). We next summarize Vestmont's initial argument.

**A. Consideration of the Expressway Zone**

Vestmont begins with the premise that the valuation of the condemned property must be calculated as if the (1) Expressway Zone, and (2) proposed Route 202 bypass did not exist. Vestmont's Br. at 18. Vestmont contends that the valuation must be "the difference between [(1)] the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected by the

_____

[19] On one hand, it is well settled that we must consider existing zoning. 26 Pa.C.S. § 703(2) cmt. On the other hand, we must account for any general knowledge of imminent condemnation. *Id.* § 704. One treatise has suggested that when "zoning is confiscatory in its effect," the landowner must pursue a validity variance. Pa. Zoning Law § 9.2.2 (discussing the relation of zoning to condemnation). *Cf. Bd. of Supervisors of Shenango Twp. v. McClimans*, 597 A.2d 738, 740, 742 n.5 (Pa. Cmwlth. 1991) (stating that when zoning effectuates a temporary taking, damages must be pursued under the Eminent Domain Code); *Kraiser v. Horsham Twp.*, 455 A.2d 782, 784 (Pa. Cmwlth. 1983) (explaining that when zoning prohibited certain structures in a flood plain, landowner could not recover condemnation damages under the Eminent Domain Code). Although the issue is not before this Court, a validity variance apparently was not an option for Vestmont.

11

condemnation and [(2)] the fair market value of the property interest remaining immediately after the condemnation and as affected by the condemnation." *Id.* (quoting 26 Pa.C.S. § 702(a)). Thus, in Vestmont's view, the Expressway Zone "must not be considered in determining any aspect of the" pre-condemnation value. *Id.* at 15, 21; *see id.* at 19. Vestmont argues that the calculation of the pre-condemnation value "must disregard any impact on the value caused by the 'imminence of condemnation.'" *Id.* at 18 (quoting 26 Pa.C.S. § 704)).[20]

Vestmont reasons that notwithstanding "clear law," PennDOT "successfully injected [the] highly prejudicial issues" of (1) the Expressway Zone, and (2) how the Expressway Zone was imposed on the property per Vestmont's conditional use application. *Id.* at 20. In support, Vestmont identifies evidence that it construes as PennDOT's concession that the Expressway Zone designation should be disregarded in calculating the pre-condemnation value. *Id.* at 19-21, 28. Thus, per Vestmont, the issue is whether the trial court erred in admitting evidence of PennDOT's pre-condemnation fair market value because that value erroneously considered the Expressway Zone. *Id.* at 15, 18, 21.[21]

---

[20] Vestmont's argument necessarily presumes that the Township's enactment of the Expressway Zone definitively signaled that condemnation would occur. As we discussed above, the Expressway Zone provided for a 25-year moratorium on construction and did not guarantee condemnation. Trial Ct. Op. at 2-3. The parties did not identify when there was general knowledge of an imminent condemnation. *See* 26 Pa.C.S. § 704.

[21] In support, Vestmont cited no legal authorities other than the Eminent Domain Code. Vestmont's Br. at 18-22. PennDOT counters that a valuation expert must consider the condemned property's existing zoning but disregard any change in the fair market value caused by the knowledge of imminent condemnation. PennDOT's Br. at 10. In PennDOT's view, under *Redevelopment Authority of Chester v. Bosacco*, 406 A.2d 1163 (Pa. Cmwlth. 1979), and the Eminent Domain Code, the trial court properly permitted all parties' valuation experts to consider the "implications of" the Expressway Zone, but disregard its impact. *Id.* at 11-12 (referencing *Commonwealth v. Fox*, 328 A.2d 872 (Pa. Cmwlth. 1974)).

PennDOT relatedly argues that a property's fair market value may be affected by the zoning on that property. *Id.* at 13. But PennDOT also recognizes that the property's existing zoning may

We briefly reiterate that the Eminent Domain Code states that a condemnee is entitled to just compensation, which is the difference in the fair market value of the property pre- and post-condemnation. *See* 26 Pa.C.S. §§ 701-702. The property's fair market value must consider the property's highest and best use, which may account for (1) existing and (2) reasonably probable and imminent changes in zoning and other governmental permissions and limitations on use. *Id.* § 703(2) & cmt. A property's pre-condemnation fair market value must also disregard any knowledge of the property's imminent condemnation. *Id.* § 704.

This Court construed the term "disregarded" in resolving whether the trial court erred by refusing to permit a valuation expert to testify because he "had considered the imminence of condemnation." *Bosacco*, 406 A.2d at 1165. In *Bosacco*, the trial court had reasoned that Section 704 meant "that a valuation expert cannot even consider the imminence of condemnation in arriving at a value." *Id.*

The *Bosacco* Court disagreed, opining that the expert must actually consider any evidence of the imminence of condemnation so that the expert can then account for any change in value before arriving at a fair market value. *Id.* The *Bosacco* Court explained that when "a commercial property is sitting vacant, a valuation expert cannot ignore that fact in valuing the property. However, if in exercising his expertise he determines that the property is vacant because of the imminence of condemnation, then he must disregard the decrease in value caused by the property's nonuse." *Id.*

---

bar the highest and best use of the property. *Id.* In that situation, PennDOT argues that any increase in the property's fair market value is inadmissible unless the proponent establishes an imminent change in the zoning permitting that use. *Id.* at 13-14 (citing cases). PennDOT summarizes evidence that it construes as establishing that a zoning change was not imminent because of significant issues with vehicle traffic. *Id.* at 14-19. In PennDOT's view, Vestmont inappropriately "seeks to prohibit any mention of [the Expressway Zone] from this trial other than to tell the jury that the Township imposed building restrictions for 25 years." *Id.* at 19.

13

Instantly, and assuming the Expressway Zone signaled knowledge of imminent condemnation, we need not resolve any apparent tension between Sections 703 and 704 of the Eminent Domain Code. The reason is because the parties' experts explicitly excluded the Expressway Zone in calculating the pre-condemnation fair market value. *See, e.g.*, N.T. Trial, 3/31/22, at 119. To the degree that Vestmont's argument suggests that an expert could not consider the Expressway Zone "in determining any aspect" of the pre-condemnation value, all experts discounted the Expressway Zone in calculating the pre-condemnation value. *Cf.* Vestmont's Br. at 15, 21, *with e.g.*, N.T. Trial, 3/31/22, at 28, 30-33, 119-21. As noted above, Vestmont's experts calculated the pre-condemnation value based upon a perceived reasonable probability of a zoning change to "town center" zoning. In contrast, PennDOT's expert calculated the pre-condemnation value without the Expressway Zone, *i.e.*, based upon the underlying existing zoning.[22] N.T. Trial, 3/31/22, at 120-21. Further, unlike PennDOT, Vestmont did not proffer an alternative valuation based upon the underlying existing zoning. The jury heard both and ruled in favor of PennDOT.[23]

To the extent that Vestmont's argument could be construed as advancing a complete disregard of the imminence of condemnation, *see* Vestmont's Br. at 15, 21, the *Bosacco* Court rejected an analogous argument. *See Bosacco*, 406 A.2d at 1165. In *Bosacco*, this Court reversed the trial court's complete exclusion of any

---

[22] An overlay district, like the Expressway Zone, supplements the property's preexisting underlying industrial, commercial, and residential zoning. *See Protect PT*, 220 A.3d at 1187; *see also* Vestmont's Br. at 4; PennDOT's Br. at 4.

[23] *Appeal of Redevelopment Auth. of City of Scranton*, 627 A.2d 292, 296 (Pa. Cmwlth. 1993) (*Scranton*) (stating that in "a condemnation case it is for the jury to resolve conflicts in the valuation testimony of experts which can be believed or disbelieved in whole or in part"). Moreover, the trial court charged the jury to consider existing zoning in arriving at fair market value unless Vestmont established a reasonable probability of a change in zoning. *See* N.T. Trial, 4/1/22, at 59. We presume the jury complied with the court's instructions in weighing each party's valuation. *See Ferguson v. Morton*, 84 A.3d 715, 725 (Pa. 2013).

14

evidence of the imminence of condemnation in arriving at a fair market value. *See id.* Assuming that the Expressway Zone signals "imminence of condemnation," to paraphrase the *Bosacco* Court, if an expert determines that the property is undeveloped "because of the imminence of condemnation, [*i.e.*, the Expressway Zone,] then he must disregard the decrease in value caused by the property's nonuse." *Cf. id.* As noted herein, PennDOT's expert similarly disregarded the impact of the Expressway Zone on the property and instead considered the underlying zoning. N.T. Trial, 3/31/22, at 120-21. Accordingly, because Vestmont did not establish the trial court erred in resolving Vestmont's motions *in limine* to preclude references to the Expressway Zone, the court did not err in denying Vestmont's motion for a new trial. *See Carlini*, 219 A.3d at 639; *Harman*, 756 A.2d at 1122-23.[24] Although the trial court accurately noted that the Expressway Zone "was the existing zoning," *see* Trial Ct. Op. at 7-8, we may affirm on any grounds

---

[24] We add that Vestmont's argument seemingly runs afoul of 26 Pa.C.S. § 1105 and *Dalgewicz*. Initially, we acknowledge that the parties did not cite or otherwise discuss 26 Pa.C.S. § 1105 or *Dalgewicz*. *See Gibraltar Rock, Inc. v. Dep't of Env't Prot.*, 286 A.3d 713, 725 (Pa. 2022) (cautioning this Court from *sua sponte* raising issues). Our Supreme Court explained that the Eminent Domain Code "liberalized" the scope of permissible expert testimony. *Dalgewicz*, 67 A.3d at 775-76. Qualified experts may "state any or all facts and data which the expert considered in arriving at an opinion." *Id.* at 776 (cleaned up); *see* 26 Pa.C.S. § 1105 cmt. (stating the "primary purpose and intent of [Section 1105], however, is to change and broaden existing law which unduly limits the examination and cross examination of an expert witness, so as to permit the expert witness to testify on direct, as well as cross examination, to any and all matters which he considered (not necessarily 'relied on') in arriving at his opinion of damages").

Here, Section 1105 apparently permits the parties' experts to testify about their consideration (and rejection) of the Expressway Zone and the conditional use application in arriving at their valuations. *See* 26 Pa.C.S. § 1105 cmt.; *see also Bosacco*, 406 A.2d at 1165. It presumably follows that when an expert opines about a reasonable probability of a zoning change, that opinion may be refuted by countervailing evidence, *e.g.,* no reasonable probability exists because of an extant overlay district. *See* 26 Pa.C.S. § 1105 cmt. Of course, the trial court would retain its usual gatekeeper function in resolving the admission of such evidence, and the factfinder would retain its role in weighing any such evidence, including resolving "conflicts in the valuation testimony of experts . . . ." *Scranton*, 627 A.2d at 296; *accord Dalgewicz*, 67 A.3d at 778.

evident from the record, *i.e.*, the parties' experts disregarded the Expressway Zone. *See Mazer*, 337 A.2d at 562 n.6. We next summarize Vestmont's second interrelated argument.

**B. Expressway Zone as Evidence for Other Purposes**

Next, Vestmont assails the trial court's reasoning for "permitting the [pre-condemnation fair market value] to be impacted by" the Expressway Zone. Vestmont's Br. at 23. In Vestmont's view, the trial court reasoned that (1) use of the Expressway Zone to refute the probability of a zoning change would not impact valuation; (2) Vestmont filed a conditional use application for, and received the benefit of, higher density zoning of the property under the Expressway Zone; and (3) regardless, PennDOT used the conditional use application to rebut Vestmont's evidence of a probable imminent zoning change. *Id.* at 23, 26-27. Vestmont rejects that reasoning because the Expressway Zone "should not be considered in determining any aspect of the [pre-condemnation value], it cannot be considered in determining the reasonable probability of obtaining a zoning change." *Id.* at 23. Vestmont reasons that the fact that it filed a conditional use application for, and purchased the property subject to, the Expressway Zone was irrelevant and prejudicial. *Id.* at 26. Lastly, Vestmont concludes that labeling the Expressway Zone evidence as "rebuttal evidence" does not make it admissible. *Id.* at 27.[25]

In reviewing the trial court's admission of evidence, the appellant must establish reversible error, *i.e.*, the trial court erroneously admitted evidence and the

---

[25] PennDOT counters that Vestmont "opened the door" by presenting witness testimony that a zoning change would have been made if requested. PennDOT's Br. at 20. PennDOT reasons that it was permitted to rebut such testimony with evidence that such a zoning change was unlikely. *Id.* PennDOT claims that much of this rebuttal evidence was "from Vestmont's own witnesses and without objection." *Id.* In PennDOT's view, the jury weighed and rejected Vestmont's testimony and evidence that the Township would have changed the zoning. *Id.* at 21.

16

error could have affected the verdict. *See Dalgewicz*, 67 A.3d at 778; *Carlini*, 219 A.3d at 639.[26] For example, if a party contends that the trial court erroneously admitted evidence barred by the Eminent Domain Code, then we apply the rules of statutory construction in construing the statute. 1 Pa.C.S. §§ 1901-1991. We may not add "a requirement which the legislature did not see fit to include." *Pilchesky v. Lackawanna Cnty.*, 88 A.3d 954, 965 (Pa. 2014) (cleaned up); Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 536 (1947) ("One more caution is relevant when one is admonished to listen attentively to what a statute says. One must also listen attentively to what it does not say.").

If evidence is potentially admissible under the Eminent Domain Code, then generally, we may not usurp the trial court's role in balancing "the alleged prejudicial effect of the evidence against its probative value." *Carlini*, 219 A.3d at 639 (citation omitted); *see generally* Pa.R.E. 403. But when the challenged evidence tends to suggest a "decision on an improper basis or divert the jury's attention away from its duty of weighing the evidence impartially," then the trial court may exclude such evidence as unfairly prejudicial. *Carlini*, 219 A.3d at 639 (citation omitted); *accord Castellani v. Scranton Times, L.P.*, 124 A.3d 1229, 1245 (Pa. 2015). However, relevant evidence that is unpleasant and "part of the history and natural development" of the case does not justify exclusion. *Smith v. Morrison*, 47 A.3d 131, 137 (Pa. Super. 2012) (cleaned up). Finally, the jury resolves the credibility and weight of expert testimony, including any conflicting valuations. *Scranton*, 627 A.2d at 296. We also presume the jury followed the charge. *Ferguson*, 84 A.3d at 725.

For example, this Court addressed the relevance of unapproved

---

[26] *See generally* Pa.R.E. 101 (stating the Rules of Evidence govern all proceedings in all courts except as provided by law); *Condemnation by Pa. Tpk. Comm'n v. Lands of Tarlini*, 185 A.3d 1177, 1183-84 (Pa. Cmwlth. 2018). *Cf.* 26 Pa.C.S. § 1101 (stating the Board of Viewers is not bound by "formal rules of evidence").

subdivision plans in calculating the fair market value. *Fox*, 328 A.2d at 875. In *Fox*, the parties agreed that the highest and best use of the condemned property was for residential use. *Id.* at 874. The parties, however, disagreed on how the property could be subdivided. *Id.* Very simply, the condemnee asserted that the property could be divided into many lots, which resulted in a high fair market value. *Id.* In contrast, the condemnor countered that the property could only be divided into fewer lots, which led to a low fair market value. *Id.* at 874-75. In support of the condemnee's fair market value, the condemnee introduced two unapproved subdivision plans, one pre-dating the condemnation and the other post-dating the condemnation. *Id.* at 875.

On appeal to this Court, the condemnor argued that such plans were inadmissible by law. *Id.* The *Fox* Court disagreed, reasoning that the pre-condemnation unapproved subdivision plan "was not so speculative as to mislead the jury in its consideration of what was the highest and best use," *i.e.*, more or fewer residential lots. *Id.* As for the post-condemnation unapproved subdivision plan, the Court stated that it was relevant to establish the impact of the condemnation on how the property could be subdivided. *Id.* at 875.[27]

Instantly, Section 704 of the Eminent Domain Code limits the use of certain evidence, *e.g.*, the Expressway Zone, in calculating the pre-condemnation fair market value. 26 Pa.C.S. § 704. Section 704, however, does not prevent such evidence from being used for other purposes. *See id.*; *Pilchesky*, 88 A.3d at 965. We decline to add a requirement that our General Assembly "did not see fit to include." *See Pilchesky*, 88 A.3d at 965. Analogous to the *Fox* Court, which declined to hold that unapproved subdivision plans were inadmissible as a matter of law, we similarly

---

[27] It would appear that such evidence would also be relevant as "part of the history and natural development" of the case. *See Smith*, 47 A.3d at 137.

18

decline to hold that evidence of the Expressway Zone is unconditionally barred as a matter of law. *Cf. Fox*, 328 A.2d at 875. Therefore, we reject Vestmont's contention that because the Expressway Zone "should not be considered in determining any aspect of the [pre-condemnation value], it cannot be considered in determining the reasonable probability of obtaining a zoning change." Vestmont's Br. at 23; *see Pilchesky*, 88 A.3d at 965; *see also* 26 Pa.C.S. § 1105.[28]

Absent statutory language to the contrary, it follows that under the Eminent Domain Code, such evidence may be used for other purposes, subject to other applicable law. *See, e.g.*, 26 Pa.C.S. § 1105; Pa.R.E. 401-403. Accordingly, we also agree with the trial court that Vestmont's conditional use application for the Expressway Zone is "part of the history and natural development" of the case, however unpleasant that may be to Vestmont. *See Smith*, 47 A.3d at 137.[29] It also follows that the trial court did not abuse its discretion in permitting the introduction of such evidence, including in rebuttal. *Cf. id.*; *see also Dalgewicz*, 67 A.3d at 778; *Carlini*, 219 A.3d at 639. Therefore, we affirm the trial court's admission of such evidence on different grounds, *i.e.*, the Eminent Domain Code does not bar such evidence unless it would violate 26 Pa.C.S. § 704. *See Mazer*, 337 A.2d at 562 n.6.[30]

---

[28] As stated above, although the parties did not invoke Section 1105 of the Eminent Domain Code, our Supreme Court's observation that the Eminent Domain Code "liberalized" the scope of permissible expert testimony suggests that such evidence may be used for other purposes.

[29] As the trial court observed, Vestmont *applied* for, and *received* the benefit of, the Expressway Zone. Trial Ct. Op. at 11-12. We noted above that Vestmont did not close on the sale until after the Township approved its conditional use application.

[30] To be clear, we are not holding that evidence of (1) existing zoning that apparently signals imminent condemnation and (2) a conditional use application for such zoning *must* be admitted as a matter of law for *any* purpose. *See* 26 Pa.C.S. § 704. The trial court remains the gatekeeper in balancing the prejudicial and probative impact of any such evidence. *See* Pa.R.E. 403; *Dalgewicz*, 67 A.3d at 778. We merely hold that on this record, Vestmont did not establish that (1) the Eminent Domain Code completely bars, as a matter of law, the use of such evidence for *any* purpose (like some prior bad acts, *see generally* Pa.R.E. 404), and (2) the prejudicial effect of such evidence outweighed its probative value. *See* Pa.R.E. 403-404.

## IV. CONCLUSION

In sum, we hold that the record reflects that both parties' experts did not consider the Expressway Zone in arriving at their respective valuations.[31] Further, the trial court did not err or abuse its discretion by admitting references to (1) Vestmont's conditional use application for the Expressway Zone and (2) the Expressway Zone. We reiterate that the jury was charged to consider the property's existing zoning, weighed the parties' experts' competing valuations, and ultimately sided with PennDOT. On this record, Vestmont failed to establish that the trial court abused its discretion or erred as a matter of law in denying Vestmont's post-trial motion. *See Castellani*, 124 A.3d at 1245; *Carlini*, 219 A.3d at 639; *Harman*, 756 A.2d at 1122-23. We affirm the judgment below, albeit on slightly different grounds. *See Mazer*, 337 A.2d at 562 n.6.

_____
LORI A. DUMAS, Judge

---

[31] As noted herein, our Supreme Court has consistently emphasized the impact of existing zoning in calculating a property's fair market value. *See Snyder*, 192 A.2d at 652; *Lieberman*, 336 A.2d at 255-56. The Expressway Zone is existing zoning. *See Protect PT*, 220 A.3d at 1187. Indeed, the trial court, in denying post-trial relief, reasoned that because the Expressway Zone was "existing zoning," the Expressway Zone was "a proper factor to be considered in determining" the property's fair market value. Trial Ct. Op. at 7-8; *see also Ferguson*, 84 A.3d at 725. Nevertheless, because both parties' experts explicitly testified they disregarded the Expressway Zone in calculating the pre-condemnation fair market value (apparently because the Expressway Zone signaled imminent condemnation), we need not resolve any apparent tension between Sections 703 and 704 of the Eminent Domain Code, 26 Pa.C.S. §§ 703-704.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Vestmont Limited Partnership, | : | |
| Vestmont Limited Partnership II, | : | |
| Vestmont Limited Partnership III | : | |
| t/d/b/a Montgomery Square | : | |
| Partnership, | : | No. 811 C.D. 2022 |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| Department of Transportation | : | |

# **O R D E R**

AND NOW, this 6th day of October, 2023, we AFFIRM the judgment of the Court of Common Pleas of Montgomery County.

_____
LORI A. DUMAS, Judge